KATHERINE C. COE *vs.* MARTIN VAN BUREN COE.

Worcester.    May 4, 1944. — June 5, 1944.

Present: FIELD, C.J., QUA, RONAN, WILKINS, & SPALDING, JJ.

*Marriage and Divorce*, Jurisdiction, Foreign divorce. *Jurisdiction*, Divorce proceedings. *Constitutional Law*, Full faith and credit, Divorce. *Estoppel*. *Public Policy*.

The full faith and credit clause of the Federal Constitution did not preclude a court of this Commonwealth from hearing evidence to impeach, for lack of jurisdiction, a decree of divorce by a court of another State.

A woman, seeking in a Probate Court in this Commonwealth further decrees based on a decree awarding her separate maintenance by her then husband, in order to controvert a contention of the respondent that her petition should be dismissed because, after the decree for separate maintenance, a decree of divorce had been granted the petitioner on her cross complaint by a court of another State, was entitled to introduce evidence to impeach such divorce decree for lack of jurisdiction.

A woman, notwithstanding the facts that she made an agreement with her husband under which she received a substantial amount of money

and his promise to make further payments and then participated in procuring in a court of another State a decree of divorce in her favor embodying such agreement, was not precluded, in proceedings afterwards instituted by her in a Probate Court in this Commonwealth and based on a decree for separate maintenance entered here before the alleged divorce, from introducing evidence to show that such decree of divorce was void here under G. L. (Ter. Ed.) c. 208, § 39.

PETITION, filed in the Probate Court for the county of Worcester on May 22, 1943, that the respondent be cited to show cause why he should not be adjudged in contempt for failure to obey a decree of that court of March 25, 1942, directing him to pay the petitioner $35 each week; also a

PETITION, filed in the same court by the same petitioner on August 30, 1943, and afterwards amended, for a modification of the decree of March 25, 1942, and an increase of the allowance to the petitioner; also a

PETITION, filed in the same court by the respondent on September 7, 1943, for revocation of the decree of March 25, 1942.

To the petition for modification, the respondent filed the plea in bar described in the opinion. The petition for modification was heard by *Wahlstrom*, J., on October 15 and October 21, 1943. There was no testimony. On the first day of the hearing, against objection by the counsel for the petitioner, the respondent was permitted to file a motion to dismiss the petition for modification. Further proceedings are described in the opinion.

*F. P. McKeon*, for the petitioner.

*S. Perman*, for the respondent.

SPALDING, J. This is an aftermath of the case of *Coe* v. *Coe*, 313 Mass. 232. In that case we affirmed the decree of the probate judge awarding the petitioner $35 a week for her separate support. The present proceedings are here on an appeal by the petitioner from a decree dismissing her petition to have the respondent adjudged in contempt for failure to make payments as ordered by the decree for separate support. She also appeals from a decree dismissing a petition to modify the original decree and from a decree revoking the same. There were also appeals from various interlocutory matters, but since these were not argued they

will be treated as waived. *Commonwealth* v. *Dyer*, 243 Mass. 472, 508.

Prior to the hearing the respondent filed a plea in bar to the petition for modification in which he alleged, as one of the grounds, that the petitioner was barred from maintaining the petition by reason of a divorce decree of the Nevada court on September 19, 1942.

When the case came on for hearing, an exemplified copy of the court proceedings in Nevada was introduced in evidence and the respondent filed a motion to dismiss, which in substance stated that the Nevada judgment was entitled to full faith and credit and that the petitioner, having obtained a divorce from the respondent in Nevada, cannot now be heard to impeach it by collateral attack. Counsel for the respondent then stated that he did not care to go forward on the plea in bar but wanted to be heard only on the motion to dismiss. The petitioner's counsel insisted that he be given an opportunity to introduce evidence establishing that the parties were never domiciled in Nevada and that its courts had no jurisdiction to grant the divorce. A lengthy colloquy with the judge followed in which the petitioner offered to prove not only that the Nevada court had no jurisdiction but that the divorce was obtained in violation of G. L. (Ter. Ed.) c. 208, § 39. The judge, subject to the petitioner's exception, ruled that no evidence in support of these matters could be introduced, and the case was then heard without evidence except the exemplified copy of the court proceedings in Nevada, referred to above.

At the conclusion of the hearing the judge entered decrees dismissing the petition to modify and the petition for contempt. At the same time a decree was entered allowing the respondent's petition to revoke the original separate support decree.

The evidence was reported and there was a report of material facts pursuant to a request under G. L. (Ter. Ed.) c. 215, § 11. The judge in said report stated that he entered the decrees above referred to "on the grounds that the parties are no longer husband and wife and have not been such since September 19, 1942, when the divorce was

granted to the petitioner by the Nevada court." A similar recital appears in each of the decrees.

An examination of the record discloses the following facts. Shortly after the decree was entered in the separate support proceedings on March 25, 1942, and while the appeal to this court was pending, the respondent went to Reno, Nevada, and after remaining there for the period required by Nevada law, instituted proceedings for divorce against the petitioner. The petitioner also went to Nevada, retained counsel, and filed an answer and cross complaint, so called, in which she asked for a divorce on grounds of extreme cruelty. It further appears that on September 16, 1942, the petitioner and the respondent executed an agreement in which the petitioner acknowledged the receipt of $7,500 from the respondent; the agreement also contained a provision for weekly payments to the petitioner who released the respondent from all obligations for further support except as stated in the agreement. Each released all claims against the other's estate. On September 19, 1942, a divorce was granted to the petitioner on her cross complaint, and as prayed for in the complaint the above mentioned agreement was "ratified, approved and confirmed, and adopted by the court as a part of its judgment . . . [therein], and each of the parties . . . [was] ordered and directed to comply with the terms thereof." No appeal was ever taken from the Nevada judgment. Thereafter the petitioner returned to Worcester and on May 22, 1943, instituted the proceedings which gave rise to this appeal. It was agreed that the respondent had in the meantime remarried.

We think that the judge erred in denying the petitioner the right to introduce evidence to impeach the Nevada judgment. The respondent, relying on *Williams* v. *North Carolina*, 317 U. S. 287, contends that the Nevada judgment is entitled to full faith and credit under § 1 of art. 4 of the United States Constitution. It is well settled that a bona fide residence on the part of at least one of the parties is essential to the validity of a decree of divorce. *Bell* v. *Bell*, 181 U. S. 175, 178. *Bergeron* v. *Bergeron*, 287 Mass. 524, 527–528. Am. Law Inst. Restatement: Conflict of Laws,

§§ 111, 113. Beale, Conflict of Laws, § 111.1. And this principle applies even though both parties are before the court. *Andrews* v. *Andrews*, 188 U. S. 14, 41, 42. *Langewald* v. *Langewald*, 234 Mass. 269, 271. There is nothing to the contrary in *Williams* v. *North Carolina, supra.* In discussing that case in the recent decision of *Bowditch* v. *Bowditch*, 314 Mass. 410, this court said at page 415: "As we interpret the decision under discussion, we are of the opinion that it is still competent for the courts of other States to inquire into the validity of a divorce so far, at least, as its validity depends upon the jurisdiction of the State where the divorce was granted, and that a domicil by one of the parties in the State in which the divorce was granted is essential to jurisdiction."

The mere fact that the Nevada judgment of divorce recited that the court had jurisdiction is not conclusive and it may be contradicted. *Bell* v. *Bell*, 181 U. S. 175, 177, 178. *Sewall* v. *Sewall*, 122 Mass. 156, 161. *Davis* v. *Davis*, 305 U. S. 32, relied upon by the respondent, is distinguishable. In that case the question of jurisdiction was contested in Virginia where the divorce was granted and there was an express finding in that court that the petitioner was domiciled in Virginia.

The respondent asserts that, even if the Nevada court was without jurisdiction to grant a divorce, the petitioner by obtaining the divorce and receiving $7,500 from the respondent is precluded from repudiating it in the courts of this Commonwealth within the principles set forth in *Chapman* v. *Chapman*, 224 Mass. 427, and cases there collected. See also Am. Law Inst. Restatement: Conflict of Laws, § 112; *Parmelee* v. *Hutchins*, 238 Mass. 561; *Bergeron* v. *Bergeron*, 287 Mass. 524, 528; 109 Am. L. R. 1018 note. But before this could be decided it was necessary to determine whether the Nevada divorce was obtained in violation of G. L. (Ter. Ed.) c. 208, § 39. [1] It has been held that where

---

[1] "A divorce decreed in another jurisdiction according to the laws thereof by a court having jurisdiction of the cause and of both the parties shall be valid and effectual in this commonwealth; but if an inhabitant of this commonwealth goes into another jurisdiction to obtain a divorce for a cause occurring here while the parties resided here, or for a cause which would not

a divorce in a foreign jurisdiction has been obtained in violation of this statute, one who participates in it is not precluded from questioning it in our courts. *Smith* v. *Smith,* 13 Gray, 209. *Andrews* v. *Andrews,* 176 Mass. 92. *Chapman* v. *Chapman,* 224 Mass. 427, 431, 432. *Langewald* v. *Langewald,* 234 Mass. 269, 271, 272. This is on grounds "of general public policy and public interest," and the parties cannot waive it. *Chase* v. *Chase,* 6 Gray, 157, 161. In the *Andrews* case it was said by Holmes, C.J., in speaking of the statute, "The Commonwealth having intervened by legislation, the appellant gets the benefit of it irrespective of any merits of her own. . . . It is settled that in a case within the statute the divorce is to be treated here as void for all purposes. . . . It is settled that there is no estoppel even as against the party instituting the foreign proceedings" (page 96). The *Chapman* case was decided on the basis that the statute had not been violated and there were express findings to that effect. The present case is distinguishable from *Loud* v. *Loud,* 129 Mass. 14, and *Langewald* v. *Langewald,* 234 Mass. 269, 272, where it was held that a spouse who connives at or acquiesces in a second marriage of the other spouse is precluded from obtaining a divorce in our courts on grounds of adultery. The petitioner is not seeking a divorce from the respondent because of adultery arising from his remarriage.

In the case at bar it was important to know whether the Nevada court had jurisdiction and whether the statute (G. L. [Ter. Ed.] c. 208, § 39) had been violated. The answers to these questions cannot be ascertained from the record because the petitioner was denied the right — which we think was error — to introduce evidence with respect to them.

It follows that the decrees appealed from are reversed and the cases are to stand for hearing in conformity with this opinion.

*Ordered accordingly.*

---

authorize a divorce by the laws of this commonwealth, a divorce so obtained shall be of no force or effect in this commonwealth." In *Andrews* v. *Andrews,* 188 U. S. 14, it was held that this statute was not repugnant to the full faith and credit clause of the United States Constitution.