HARRY L. COHEN *vs.* FLORENCE COHEN.

Hampden.    November 27, 1945. — January 7, 1946.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Marriage and Divorce*, Jurisdiction, Foreign divorce, Separate maintenance. *Jurisdiction*, Divorce proceedings. *Domicil. Estoppel. Public Policy. Ne Exeat, Writ of. Bail.*

A decree for separate maintenance under G. L. (Ter. Ed.) c. 209, § 32, as amended, cannot provide for support of the wife after the termination of the marriage relation.

A decree of divorce, procured by the husband in Nevada while he and his wife were domiciled in this Commonwealth, either for a cause occurring here while the parties resided here or for a cause which would not authorize a divorce by the laws of this Commonwealth, was invalid under G. L. (Ter. Ed.) c. 208, § 39, and ineffectual as a bar to enforcement of a decree for separate maintenance under c. 209, § 32, although the divorce was sought by the husband after residing in Nevada for more than the six weeks required there for obtaining a decree for divorce, "which fact was not contested by the wife," the wife appeared in the Nevada proceeding and filed an answer and cross-complaint, and the Nevada decree recited that evidence was introduced "by and on behalf of the respective parties."

A Nevada court had no jurisdiction to grant a divorce where neither of the parties had a domicil in that State, although the party seeking the

---

[1] Emphasis added.

divorce had resided there for the six weeks' period required by the Nevada statute for the purpose of decreeing a divorce and in the Nevada proceeding the other party appeared, filed an answer and cross-complaint, and did not contest the fact of such residence, and the Nevada decree recited that evidence was introduced "by and on behalf of the respective parties."

At least in the absence of genuine litigation and determination in a court of another State of the jurisdictional facts underlying a judgment of divorce rendered by that court, such facts may be inquired into by the Massachusetts courts.

A husband, who went from Massachusetts, where he and his wife had their matrimonial domicil, to Nevada to obtain a divorce, not intending to reside there permanently but intending to return to Massachusetts upon obtaining the divorce, and who did return here upon obtaining it, did not acquire a domicil in Nevada sufficient to give the Nevada court jurisdiction to grant the divorce, although he resided there for the six weeks' period required by the Nevada statute for the purpose of decreeing a divorce.

A wife, by appearing and filing an answer and cross-complaint in a divorce proceeding instituted by her husband in Nevada, and not contesting the fact of his residence in Nevada for the six weeks' period required by the Nevada statute for procuring a decree of divorce, was not precluded from contesting in a Massachusetts court the validity of a divorce granted to the husband in the Nevada proceeding, where such divorce was obtained by him in violation of G. L. (Ter. Ed.) c. 208, § 39.

Discussion by WILKINS, J., of the writ of ne exeat.

A writ of ne exeat was properly issued by a Probate Court against a husband where, at a time when he was in arrears in payments previously decreed for the separate maintenance of his wife, he intended to leave the Commonwealth; but the writ should have been discharged upon his giving sufficient bail.

Bail, posted by a husband in a Probate Court upon the issuance against him of a writ of ne exeat upon the ground that he intended to leave the Commonwealth at a time when he was in arrears in payments previously decreed for the separate maintenance of his wife, should not later be ordered returned to him unless it appeared that he had paid the arrears due at the time of the issuance of the writ.

PETITION, filed in the Probate Court for the county of Hampden on March 30, 1943.

The case was heard by *Denison*, J.

In this court the case was submitted on briefs.

*G. J. Callahan*, for the petitioner.

*M. J. Donovan*, for the respondent.

WILKINS, J. This is a petition for vacation of a decree of separate support and of a decree whereunder a writ of

ne exeat issued. From a decree dismissing the petition, the petitioner appealed.

The facts appear from a "statement of agreed facts" which meets the requirements of a case stated. G. L. (Ter. Ed.) c. 231, § 126. On August 30, 1923, the parties, both of Springfield, were married there, and thereafter lived together in that city. On April 23, 1930, the wife filed a petition for separate support in the Probate Court for Hampden County, and on June 16, 1930, a decree was entered which declared that she was living apart from her husband for justifiable cause, awarded her custody of a minor daughter, and ordered the husband to pay for their support the sum of $150 and a further weekly sum of $20. In the summer of 1932 the husband went to Nevada to obtain a divorce either for a cause occurring in this Commonwealth while the parties resided here or for a cause which would not authorize a divorce by the laws of this Commonwealth. He never intended to reside permanently in Nevada, but intended to return to this Commonwealth as soon as he should obtain a divorce in Nevada. He did so return after he had obtained on November 3, 1932, a judgment and decree of absolute divorce in the First Judicial District Court of the State of Nevada in and for the County of Ormsby, which also ordered him to pay the wife $30 monthly for the support, maintenance, and education of the minor child, "the court reserving jurisdiction over the support, maintenance and education of said minor child." The husband resided in Nevada for more than six weeks immediately preceding the filing of his petition for divorce, "which fact was not contested" by the wife, who filed an answer and a cross-complaint, "appearing by deposition and by her attorneys." The divorce decree states that "witnesses . . . appeared by depositions and evidence [was] introduced by and on behalf of the respective parties." The Nevada law required a residence in that State "of only six weeks" for the purpose of decreeing a divorce.

On January 13, 1933, during "a hearing for contempt" for failure to comply with the decree of June 16, 1930, the

wife filed in the Probate Court for Hampden County a petition for a writ of ne exeat. The petition was allowed on the same day, it appearing that there had not been compliance with that part of the decree of June 16, 1930, requiring weekly payments, and that the husband intended to absent himself permanently from the Commonwealth. In accordance with a court order the husband posted $2,000 in cash with the register of probate as "bail and security" that he "will not go or attempt to go into parts beyond the Commonwealth without the leave of said court." On October 17, 1935, the decree of June 16, 1930, was modified by increasing the weekly payments to $30. Since January 13, 1933, the husband has continuously resided and been domiciled in this Commonwealth at either Springfield or Pittsfield, and "has never absented himself from this Commonwealth except for vacation and business trips, the duration of which never exceeded the time required for a so called weekend trip."

1. A decree for separate support under our statute cannot provide for the support of the wife after the termination of the marriage relation. *Rosa* v. *Rosa*, 296 Mass. 271, 272, and cases cited. See G. L. (Ter. Ed.) c. 209, § 32, as amended. We are thus confronted with the question of the validity of the Nevada divorce. *Esenwein* v. *Commonwealth*, 325 U. S. 279, 280. In general, it is well established that jurisdiction to grant a divorce must be based upon the domicil of at least one of the parties, and that the jurisdiction of a State which has undertaken to grant a divorce may be made the subject of inquiry elsewhere. *Andrews* v. *Andrews*, 176 Mass. 92, 93; *S. C.* 188 U. S. 14, 40. *Bowditch* v. *Bowditch*, 314 Mass. 410, 415. *Coe* v. *Coe*, 316 Mass. 423, 426. *Williams* v. *North Carolina*, 325 U. S. 226, 229. Am. Law Inst. Restatement: Conflict of Laws, § 111. Beale, Conflict of Laws, §§ 111.1, 111.2. It is "clear that the provision of the Nevada statute that a plaintiff in this type of case must 'reside' in the State for the required period requires him to have a domicil, as distinguished from a mere residence, in the State." *Williams* v. *North Carolina*, 317 U. S. 287, 298. Likewise it is

settled that the mere recital in the proceedings of the facts necessary to show jurisdiction may be contradicted. *Sewall v. Sewall,* 122 Mass. 156, 161. *Thompson v. Whitman,* 18 Wall. 457, 468. *Bell v. Bell,* 181 U. S. 175, 178. The filing of an appearance by the appellee does not avail to cure jurisdictional defect. *Andrews v. Andrews,* 176 Mass. 92, 94–96; *S. C.* 188 U. S. 14, 40–41. *Langewald v. Langewald,* 234 Mass. 269, 270–271. *Chicago Life Ins. Co. v. Cherry,* 244 U. S. 25, 29.

Here it is patent that neither husband nor wife was domiciled in Nevada. It is also clear that there was a violation of G. L. (Ter. Ed.) c. 208, § 39.[1] All this the husband frankly concedes may be properly determined on the facts. His contention, however, is that the Nevada decree is binding upon the wife because she appeared, and filed an answer and a cross-complaint, and because "witnesses . . . appeared by depositions and evidence [was] introduced by and on behalf of the respective parties." He relies upon *Davis v. Davis,* 305 U. S. 32, a case which we have interpreted as resting on the basis that the jurisdictional facts were actually litigated and determined to exist in the court granting the divorce. *Bowditch v. Bowditch,* 314 Mass. 410, 416. See *Williams v. North Carolina,* 325 U. S. 226, 230; *Schaeffer v. Schaeffer,* 128 Conn. 628, 631–634; *Drake v. Drake,* 187 Ga. 423, 429–432; *Pratt v. Miedema,* 311 Mich. 64, 67–68. See also Beale, Conflict of Laws, § 111.3. In the case at bar on the inferences fairly to be drawn from the facts agreed, which recite that the "fact" of residence of the husband for six weeks in Nevada "was not contested," it cannot be rightly concluded that there were an actual litigation and determination of the jurisdictional facts. There was, at most, "a tacit assumption or mere declaration in the record that the court had jurisdiction." *Chicago Life Ins. Co. v. Cherry,* 244 U. S. 25,

---

[1] "A divorce decreed in another jurisdiction according to the laws thereof by a court having jurisdiction of the cause and of both the parties shall be valid and effectual in this commonwealth; but if an inhabitant of this commonwealth goes into another jurisdiction to obtain a divorce for a cause occurring here while the parties resided here, or for a cause which would not authorize a divorce by the laws of this commonwealth, a divorce so obtained shall be of no force or effect in this commonwealth."

29–30. See *Baldwin* v. *Iowa State Traveling Men's Association*, 283 U. S. 522, 525–526; *Adam* v. *Saenger*, 303 U. S. 59, 62, 67–68. Regardless of the effect to be given to a genuine contest on the issue of jurisdiction when it actually occurs in divorce proceedings in another State, there is nothing to remove the case before us from the authority of controlling decisions holding that even a participating spouse is not barred from questioning in our courts the validity of a foreign decree obtained in violation of our statute. *Chase* v. *Chase*, 6 Gray, 157, 160–161. *Coe* v. *Coe*, 316 Mass. 423, 428, and cases cited. See *Giresi* v. *Giresi*, 137 N. J. Eq. 336. We, therefore, conclude that there was no error in the dismissal of the petition in so far as it sought a revocation of the decree for separate support.

2. We now consider the dismissal of the petition in so far as it sought the return of the $2,000 and the revocation of the decree that a writ of ne exeat issue. "We have no statutory provisions in this Commonwealth in regard to writs of ne exeat, and they are governed by the rules of the common law and of general equity jurisprudence. The object of such a writ is to secure to the plaintiff the presence of the defendant at the termination of the suit, either by his detention or by his giving equitable bail." *Dunsmoor* v. *Bankers Surety Co.* 206 Mass. 23, 26. *Rice* v. *Hale*, 5 Cush. 238, 244. *Nelson* v. *Sanderson*, 285 Mass. 583, 587, 588. The writ and its attributes are almost entirely derived from the English authorities and practices. Story, Eq. Jur. (14th ed.) § 1915. These authorities and practices were to the effect that alimony decreed to a wife would be enforced by a writ of ne exeat, but only to the extent of arrears actually due,[1] against a husband who was about to quit the realm. Ibid. §§ 1917, 1918. Beames on Ne

---

[1] *Shaftoe* v. *Shaftoe*, 7 Ves. 171. *Dawson* v. *Dawson*, 7 Ves. 173. *Haffey* v. *Haffey*, 14 Ves. 261. *Bailey* v. *Cadwell*, 51 Mich. 217. *Deering* v. *Wayne Circuit Judge*, 228 Mich. 648. See note 4, 4 Ves. 592. Alimony was an exception to the rule confining the writ to equitable debts, and arose because the ecclesiastical courts could not effectively enforce it. See Beames on Ne Exeat Regno (1st Am. ed.) 29–30; Story, Eq. Jur. (14th ed.) § 1918. Compare *Moore* v. *Valda*, 151 Mass. 363.

Exeat Regno (1st Am. ed.) 30–31.[1] The writ "is regarded as little more than an order to hold to equitable bail. The party may generally get rid of it by giving security to abide the event of the cause in litigation." Beames on Ne Exeat Regno (1st Am. ed.) preface 6, 58–59. An appropriate method of terminating the writ is by motion to discharge or quash. See *Jacobsen* v. *Jacobsen*, 126 Fed. (2d) 13; *Lewis* v. *Shainwald*, 48 Fed. 492, 499–500; *Johnson* v. *Johnson*, 189 Miss. 561, 570; *Dithmar* v. *Dithmar*, 2 Robb. (N. J.) 533; *Chew* v. *Chew*, 4 Buch. 285; *Friedland* v. *Isquith*, 106 N. J. Eq. 344; Daniell, Ch. Pr. (8th ed.) 1446–1448. Apparently the husband in the case at bar allowed ten years to elapse before in effect making such a motion by filing this petition, under which he might show that the purpose of the writ, namely, to insure his continued presence until payment of the arrears due when the writ issued, had been accomplished. It is obvious that the writ was properly issued in 1933. There was a concurrence of arrears in payments and intent to leave the Commonwealth. The question now is whether there was error in the refusal in 1943 to order discharge of the writ or return of the bail. The writ of ne exeat operates in restraint of personal liberty. It is to be granted with caution. It is to be continued in force with caution.[2] Since bail had been given, the writ should have been discharged, and to that extent the decree was wrong. But no error appears in the refusal to order return of the bail, as we cannot assume from the facts agreed that the arrears due in 1933 had since been paid. Upon a showing at any time that such arrears have been paid, the bail should be returned.

In so far as the decree operates to deny the prayer for vacation of the decree of separate support, it is affirmed. In so far as it operates to deny the prayer for the discharge of the writ of ne exeat, it is reversed, and instead the writ

---

[1] Petitions for separate support so far as they relate to payments by the husband to the wife bear close analogy to payments of alimony in libels for divorce. *Williamson* v. *Williamson*, 246 Mass. 270, 272. *Densten* v. *Densten*, 280 Mass. 48, 50. *Coe* v. *Coe*, 313 Mass. 232, 235.

[2] See statement of Lord Eldon in *Hannay* v. *M'Entire*, 11 Ves. 54, 55; *Andersen* v. *Andersen*, 315 Ill. App. 380, 387; *McPartland* v. *McPartland*, 146 Misc. (N. Y.) 674.

is to be discharged. In the matter of the return of bail, the case is remanded to the Probate Court for further proceedings.                                              *So ordered.*