## COE *v.* COE.

No. 37.   Argued October 14, 1947.—Decided June 7, 1948.

*Samuel Perman* argued the cause for petitioner. With him on the brief was *George H. Mason.*

*Francis M. Shea* argued the cause for respondent. With him on the brief was *Warner W. Gardner.*

MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

This is the companion case to *Sherrer* v. *Sherrer, ante,* p. 343. We granted certiorari to consider the contention of petitioner that the courts of Massachusetts have failed to accord full faith and credit to a decree of divorce rendered by a court of the State of Nevada.

Petitioner, Martin V. B. Coe, and the respondent, Katherine C. Coe, were married in New York in 1934, and thereafter resided as husband and wife in Worcester, Massachusetts.[1] Discord developed between the parties, and on January 13, 1942, respondent filed a petition for separate support in the Probate Court for the County of Worcester. Petitioner answered and filed a libel for

---

[1] It appears that after October, 1940, petitioner maintained an apartment in New York City. The Massachusetts courts found that petitioner did not thereby lose his Massachusetts domicile.

divorce. Following a hearing, the petition for separate support was granted and the libel for divorce was dismissed.[2] The decree of the Probate Court was affirmed by the Supreme Judicial Court of Massachusetts on February 23, 1943.[3]

Petitioner left Worcester in May, 1942, and arrived in Reno, Nevada, on June 10, accompanied by his secretary, one Dawn Allen, and her mother. On July 24, 1942, petitioner, through his attorney, instituted divorce proceedings by filing a complaint in the First Judicial District Court of the State of Nevada. The complaint alleged that petitioner was a bona fide resident of the State of Nevada [4] and charged respondent with desertion and extreme cruelty. Respondent received notice of the proceedings while in Massachusetts. She arrived in Nevada in August, 1942, and thereafter, through attorneys, filed an answer to petitioner's complaint together with a cross-complaint for divorce alleging extreme cruelty on the part of petitioner as grounds for her suit. Respondent's answer admitted as true the allegations of petitioner's complaint relating to petitioner's Nevada residence.

At the hearing in the divorce. proceedings, petitioner and respondent appeared personally. Both parties were represented by counsel. Petitioner testified that he had come to Nevada with the intention of making that State

---

[2] By the terms of the decree of separate support entered on March 25, 1942, petitioner was ordered to pay to respondent the sum of $35 each week.

[3] 313 Mass. 232, 46 N. E. 2d 1017 (1943).

[4] The first allegation of petitioner's complaint stated: "That plaintiff for more than six weeks last past and immediately preceding the filing of this complaint has been continuously and now is, a bona fide resident of, and during all of said period of time, has had and now has his residence within the State of Nevada, and has been physically, corporally and actually present in said State during all of ·the aforesaid period of time."

his home and that such was his present intention. Respondent gave testimony with respect to specific acts of cruelty, but raised no question in relation to petitioner's domicile. On September 19, 1942, the Nevada court, after finding that it had "jurisdiction of the plaintiff and defendant and of the subject matter involved," [5] entered a decree granting respondent a divorce as prayed for in her cross-complaint.[6]  Neither party challenged the decree by appeal to the Nevada Supreme Court.[7]

Following the entry of the divorce decree, petitioner and Dawn Allen were married in Nevada.   Shortly thereafter, they returned to Worcester, Massachusetts, as husband and wife.   In May or June, 1943, they left Massachusetts for Nevada where they remained until August of that year.

On May 22, 1943, respondent filed a petition in the Probate Court for the County of Worcester, praying that petitioner be adjudged in contempt of court for failing to abide by the terms of the decree for separate support which had been entered by the Massachusetts court in the previous year.[8]  Subsequently, respondent also moved that the decree for separate support be modified so as

---

[5] The Nevada courts recognize domicile of one of the parties as a prerequisite to divorce jurisdiction, *Latterner* v. *Latterner*, 51 Nev. 285, 274 P. 194 (1929).  Power to decree divorces in appropriate cases is conferred upon the District Courts by Nevada statute.   Nev. Comp. Laws, § 9460.

[6] Incorporated into the decree was a written agreement whereby petitioner was to pay respondent the sum of $7,500 plus $35 per week so long as she should remain single.   Pursuant to this agreement, petitioner paid the sum of $7,500 at the time the decree was entered.

[7] Appeals lie to the Nevada Supreme Court in divorce cases.   See, *e. g.*, *Afriat* v. *Afriat,* 61 Nev. 321, 117 P. 2d 83 (1941).

[8] Apparently upon advice of counsel, petitioner had failed to pay any of the weekly installments required under the decree for separate support or under the agreement incorporated into the divorce decree after the date of the divorce decree.

to award her a larger allowance. Petitioner in his answer denied that the decree for separate support was still in effect and set up the Nevada divorce decree as a bar to respondent's action.

In the hearings which followed, petitioner introduced in evidence an exemplified copy of the Nevada court proceeding. The presiding judge refused to allow the introduction of evidence placing in issue petitioner's Nevada domicile and thereby the jurisdiction of the Nevada court, on the ground that permitting such collateral attack was not consistent with the requirements of full faith and credit. Petitioner's motion to dismiss the action was, accordingly, allowed.

The Supreme Judicial Court of Massachusetts reversed on appeal, holding that the Probate Court had erred in excluding the evidence placing in issue petitioner's Nevada domicile and the jurisdiction of the Nevada court.[9] In conformity with that judgment, the Probate Court held an extended hearing on those questions.[10] The court concluded that petitioner went to Nevada to seek a divorce; that neither petitioner nor respondent had a bona fide residence in that State; that the Nevada court did not have jurisdiction of either party; and that the divorce was in violation of the provisions of the appli-

[9] 316 Mass. 423, 55 N. E. 2d 702 (1944).

[10] Petitioner testified that since his arrival in Nevada in June, 1942, he had been domiciled in that State. He stated that he went to Nevada to help his asthma and to take advantage of the liberal tax laws and that he intended to reside in Nevada whether or not he obtained a divorce. He testified further that following his marriage with Dawn Allen, he went to Worcester, Massachusetts, for the purpose of disposing of two houses which he owned. He subsequently returned to Nevada in May, 1943. Petitioner stated that shortly after his return to Nevada, he learned that respondent had instituted contempt proceedings in the Massachusetts Probate Court and upon advice of counsel went to Massachusetts in August, 1943, to defend the action.

cable Massachusetts statute.[11]   The Probate Court dismissed petitioner's motion for revocation of the decree for separate support and modified that decree so as to award respondent a substantially larger allowance.   On appeal, the Supreme Judicial Court affirmed the order of the Probate Court dismissing petitioner's motion to revoke the decree for separate support, on the ground that the evidence supported the conclusion that petitioner was never domiciled in Nevada and that the Nevada courts lacked jurisdiction to enter the decree of divorce. The order of the Probate Court modifying the decree for separate support was reversed, apparently for further hearings on petitioner's financial condition.[12]   There is no suggestion in the opinion of the Supreme Judicial Court that petitioner, under state law, could be held to the obligations imposed by the decree for separate support if it be conceded that the Nevada decree of divorce is valid.[13]

It is clear that the decree of divorce in question is valid and final in the State in which it was rendered and, under the law of Nevada, may not be subjected to the collateral attack permitted in this case in the Massachusetts courts.[14] Respondent does not urge the contrary.

[11] Mass. Gen. Laws (Ter. ed.), c. 208, § 39, provides: "A divorce decreed in another jurisdiction according to the laws thereof by a court having jurisdiction of the cause and of both the parties shall be valid and effectual in this commonwealth; but if an inhabitant of this commonwealth goes into another jurisdiction to obtain a divorce for a cause occurring here while the parties resided here, or for a cause which would not authorize a divorce by the laws of this commonwealth, a divorce so obtained shall be of no force or effect in this commonwealth."

[12] 320 Mass. 295, 69 N. E. 2d 793 (1946).

[13] See *Rosa* v. *Rosa*, 296 Mass. 271, 5 N. E. 2d 417 (1936); *Cohen* v. *Cohen*, 319 Mass. 31, 64 N. E. 2d 689 (1946).   Cf. *Estin* v. *Estin*, *post*, p. 541; *Kreiger* v. *Kreiger*, *post*, p. 555.

[14] *Confer* v. *District Court*, 49 Nev. 18, 234 P. 688, 236 P. 1097 (1925).   And see *Chamblin* v. *Chamblin*, 55 Nev. 146, 27 P. 2d 1061 (1934); *Calvert* v. *Calvert*, 61 Nev. 168, 122 P. 2d 426 (1942).

Nor has it been suggested that the proceedings before the Nevada court were in any degree violative of the requirements of procedural due process or that respondent was denied a full opportunity to contest the issue of petitioner's Nevada domicile.

It is abundantly clear that respondent participated in the Nevada divorce proceedings. She appeared personally and gave testimony at the hearing. Through her attorneys she filed pleadings in answer to petitioner's complaint and successfully invoked the jurisdiction of the Nevada court to obtain the decree of divorce which she subsequently subjected to attack as invalid in the Massachusetts courts.

Thus, here, as in the *Sherrer* case, the decree of divorce is one which was entered after proceedings in which there was participation by both plaintiff and defendant and in which both parties were given full opportunity to contest the jurisdictional issues. It is a decree not susceptible to collateral attack in the courts of the State in which it was rendered. In the *Sherrer* case, we concluded that the requirements of full faith and credit preclude the courts of a sister State from subjecting such a decree to collateral attack by readjudicating the existence of jurisdictional facts. That principle is no less applicable where, as here, the party initiating the collateral attack is the party in whose favor the decree was entered. For reasons stated at length in the *Sherrer* case, we hold that the Massachusetts courts erred in permitting the Nevada divorce decree to be subjected to attack on the ground that petitioner was not domiciled in Nevada at the time the decree was entered.

*Reversed.*

[For dissenting opinion of FRANKFURTER, J., concurred in by MURPHY, J., see *ante*, p. 356.]