**SONIA HERRUP ALTON, Plaintiff**

v.

**DAVID ELIE ALTON, Defendant**

Civil No. 145 - 1953

District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

June 13, 1953■

*See, also, 121 F. Supp. 878*

DUDLEY, HOFFMAN AND McGOWAN (GEORGE H. T. DUD-
LEY, St. Thomas, Virgin Islands, of counsel) *for plaintiff*
MAAS AND BAILEY (DAVID E. MAAS, St. Thomas, Virgin
Islands, of counsel), *for defendant*

MOORE, *Judge*

This matter came on to be heard on a motion by the plaintiff for order confirming the recommendation of the District Court Commissioner that a divorce be granted.

Plaintiff's case was heard before the commissioner in accordance with the provisions of Title I, ch. I, sec. 6, as amended, of the Code of Laws of the Municipality of Saint Thomas and Saint John (1921 Code; 4 V.I.C. § 36). Plaintiff testified that she took up residence more than six weeks prior to the commencement of her action for divorce and that during that time she never left the jurisdiction and,

therefore, claims that having complied with the jurisdictional requirements of section 9(a) of the Divorce Law of the Virgin Islands (Dec. 29, 1944, Bill No. 14, as added by section 1 of) Bill No. 55 of 1953 (Act of May 29, 1953; 16 V.I.C. § 106 note), the Court has jurisdiction of her suit and she is entitled to a decree of divorce.

At the outset, it might be stated that the Court is of the opinion that a case of incompatibility has been made out by the plaintiff and that the only question to be determined is whether the new jurisdictional section of the divorce law, under which this case is brought, is legally sufficient to establish domicile and, therefore, to give jurisdiction of this matter to this court.

Under the Divorce Law of the Virgin Islands, before amendment, the jurisdiction of the court was set forth in sections 8 and 9, Bill No. 14 of 1944 (Act of Dec. 29, 1944; 16 V.I.C. §§ 105, 106) which sections read as follows:

"Section 8. When a marriage has been solemnized in the district an action may be maintained to declare it void if the plaintiff is an inhabitant of the district at the commencement of the action. If the marriage has not been solemnized in the district, such action can only be maintained when the plaintiff has been an inhabitant thereof for six weeks prior to the commencement of the action.

"Section 9. In an action for the dissolution of the marriage contract or for a legal separation the plaintiff therein must be an inhabitant of the district at the commencement of the action and for six weeks prior thereto, which residence shall be sufficient to give the Court jurisdiction without regard to the place where the marriage was solemnized or the cause of action arose."

The new section, 9(a)■ is by way of an addition to the above sections, which remain as quoted. The new section provides as follows:

Section 9(a). "Notwithstanding the provisions of sections 8 and 9 hereof, if the plaintiff is within the district at the time of the filing of the complaint and has been continuously for six weeks immediately prior thereto, this shall be prima facie evidence of domicile, and where the defendant has been personally served within the district or enters a general appearance in the action, then the Court shall have jurisdiction of the action and of the parties thereto without further reference to domicile or to the place where the marriage was solemnized or the cause of action arose."

It is under this new provision that plaintiff claims the Court has jurisdiction of the suit at bar.

Prior to the enactment of this new section 9(a), section 9, above, was interpreted by the United States Court of Appeals, Third Circuit, in the case of Burch v. Burch, 2 V.I. 559, 195 F.2d 799, 804, in the following manner:

"At the outset we are confronted with a question of jurisdiction. Under our system of law, judicial power to grant a divorce is founded on domicile. Williams v. North Carolina, 1945, 325 U.S. 226, 229, 65 S. Ct. 1092, 89 L. Ed. 1577. Accordingly the domicile of at least one of the spouses must be within a state or territory in order to give the courts of that state or territory power to dissolve the marriage. Section 9 of the Divorce Law of the Virgin Islands provides that the plaintiff in an action for the dissolution of marriage 'must be an inhabitant of the district at the commencement of the action and for six weeks prior thereto, which residence shall be sufficient to give the Court jurisdiction'. In the light of the rule of law to which we have referred the words 'inhabitant' and 'residence' as used in the statute must be taken to mean 'domiciliary' and 'domicile' respectively. It follows that in order to support a decree for divorce in the Virgin Islands there must be a finding by the District Court that the plaintiff was domiciled in the Virgin Islands at the commencement of the action and for six weeks prior thereto. Domicile is a familiar concept in the law upon which we think it unnecessary to elaborate other than to point out that it involves the idea of a residence sufficiently permanent that its termination is not presently contemplated. Jurisdiction to decree a divorce is not conferred upon the court by a mere temporary

residence in the district which is accompanied by a present intention on the part of the plaintiff to leave the Islands as soon as a divorce is granted."

■ We might say at the outset that it has been strongly argued that this statement of the Court of Appeals is dicta; that there was no question of jurisdiction raised in the case; that the plaintiff in this case was clearly domiciled in the Virgin Islands; that the Court of Appeals concluded that the District Court had jurisdiction to entertain the suit and this was not a ruling upon any issue in that suit. This court, however, is of the opposite opinion, to wit: that the question of jurisdiction is an issue to be settled first and may be raised by the court itself, even if not raised by either party. Furthermore, that in settling that question the court first laid down the rule governing jurisdiction, then applied the facts of the case to that rule in order to determine whether it did or did not have such jurisdiction; that its determination of that question by the rule thus enunciated is the ruling on the issue of jurisdiction and, therefore, not dicta. In addition, since the Court of Appeals said that "at the outset we are confronted with a question of jurisdiction", certainly the district court cannot rule that its appellate court was not so confronted.

Now, we turn to the question of the validity of section 9(a). Since this new section is a jurisdictional statute purporting to confer jurisdiction under certain circumstances, it is necessary for us to determine whether it does confer the jurisdiction intended.

■■ First. It is contended, in the first place, that this new section is a procedural statute establishing what evidence shall constitute prima facie proof of domicile in certain circumstances and does not change the basis of jurisdiction or in any way eliminate the concept of domicile. It is admittedly within the competence of the legislature to change or modify rules of evidence or pro-

286

cedure. The question here is whether the modification in the new law sufficiently complies with the idea of domicile itself. Since "domicile" is such a familiar and well defined concept, this court doubts whether the standard fixed by the legislature is sufficient to constitute "prima facie evidence" of such domicile. In Burch v. Burch, supra, the court said of domicile that "It involves the idea of a residence sufficiently permanent that its termination is not presently contemplated." The act, which the statute makes prima facie evidence of that intention, does not in itself indicate whether the intention does exist or does not exist, for the stay during the statutory period may be with the intention of continuing to remain in the Virgin Islands after the divorce is granted or of leaving thereafter. One may be inferred from the act as well as the other. However, the fact that the defendant is required to have notice of the same either by personal service within the jurisdiction or by appearance in the action and that the defendant does not contest it, having opportunity to do so, may add to the weight given it by the legislature as prima facie evidence of an intention to reside on the part of the plaintiff.

If the procedure fixed by the legislature is sufficient, the statute would be valid for it would then be in conformity with all of the recent decisions of the Supreme Court upholding divorce decrees where there was a requirement of domicile of the plaintiff and the court had jurisdiction of the parties to the action. It is solely because of the Court's doubt of the sufficiency of that as prima facie evidence that it cannot hold it to be a valid statute giving the jurisdiction intended.

Second. Notwithstanding the above, it has been argued that this court has no power to question the judgment of the legislature in setting the rule for prima facie evidence of domicile which it has fixed, any more than it has au-

thority to question the wisdom or the lack of wisdom of the policy of any piece of legislation. It is contended that the legislature of the Virgin Islands has the power to fix the basis or measure of jurisdiction in any particular type of action; that section 9A is just such an exercise of that authority, since that section merely prescribes the facts which shall constitute prima facie evidence of domicile sufficient to give the court jurisdiction when both parties are before the court. It is further argued that not only is the power of prescribing the jurisdiction of courts inherent in the legislature, but that this is peculiarly so with respect to divorce actions, since it has always been held that the state has an interest in the marital relationship of its domiciliaries and marriages may not be contracted or terminated contrary to its public policy. Therefore, it is contended that the legislature of the Virgin Islands has the power to fix any rule it sees fit, either for jurisdiction or the proof of domicile, and any decree pursuant thereto shall be valid within the confines of its borders, the court having no power to declare such law invalid on the grounds that a divorce so granted may or may not be assailable in other jurisdictions. In this connection the Supreme Court in the case of Sutton v. Leib, 342 U.S. 402, 72 S. Ct. 398, 96 L. Ed. 448, quotes the Court of Appeals of the Seventh Circuit 188 F.2d 766 as follows:

" 'We have searched the numerous cases decided by the Supreme Court of the United States on the subject of migratory divorce for a definitive holding as to the judicial status of such divorce in the state that decreed it. It appears to be assumed that the decree is valid and binding in the state where it is rendered. Thus Mr. Justice Frankfurter remarks in his concurring opinion, Williams v. North Carolina, 317 U.S. 287, 307, 63 S. Ct. 207, 217, 87 L. Ed. 279, "It is indisputable that the Nevada decrees here, like the Connecticut decree in the Haddock . . . case [Haddock v. Haddock, 201 U.S. 562, 26 S. Ct. 525, 50 L. Ed. 867], were valid and binding in the state where they

were rendered." And Mr. Justice Murphy, concurring in Williams v. State of North Carolina, 325 U.S. 226, 239, 65 S. Ct. 1092, 1099, 89 L. Ed. 1577, states that "The State of Nevada has unquestioned authority, consistent with procedural due process, to grant divorces on whatever basis it sees fit to all who meet its statutory requirements. It is entitled, moreover, to give to its divorce decrees absolute and binding finality within the confines of its borders." And Mr. Justice Rutledge, dissenting in the same case, 325 U.S. at page 244, 65 S. Ct. at page 1102 . . ., comments on the fact that the Nevada judgment was not voided by the decision. "It could not be, if the same test applies to sustain it as upholds the North Carolina convictions. It stands, with the marriages founded upon it, unimpeached." He and Mr. Justice Black, also dissenting, both call attention to the fact that the Court, in its decision, does not hold that the Nevada judgment is invalid in Nevada. Hence, in spite of the absence of a clear-cut statement in any of the main opinions of the Court as to the status of the Nevada decree in Nevada after a successful extraterritorial challenge of it, we think we may spell out authority for our assumption that it survives such challenge and remains in full force and effect within the confines of the state of Nevada until and unless it is set aside upon review in that state.' " — 342 U.S. (402), at page 404, footnote 2, 72 S. Ct. (398), at page 400.

While quoting this part of the opinion of the Seventh Circuit Court of Appeals, the Supreme Court held that it was wrongly applied to the facts of the Sutton case, supra, saying in 342 U.S. at page 404, 72 S. Ct. at page 400:

"The affirmance was bottomed on the conclusion that, as the Nevada marriage of petitioner was valid in Nevada, it terminated the liability for alimony under the Illinois judgment of divorce. The court thus gave full faith and credit to the Nevada marriage rather than the New York annulment."

The opinion of the Seventh Circuit Court of Appeals would seem to indicate that the legislature of the Virgin Islands acting with respect to matters within its borders, has the power to act therein as it sees fit and the court can-

not go out of that orbit in determining the validity of such acts. But if we compare this opinion of the Court of Appeals for the Seventh Circuit with the opinion of the Third Circuit Court of Appeals in the Burch case, supra, there seems to be a fundamental difference of opinion. Our circuit holds that " . . . the domicile of at least one of the spouses must be within a state or territory in order to give the courts of that state or territory power to dissolve the marriage." While the wording therein speaks of the "courts" of a state or territory, when taken in connection with the opening statement of the Court of Appeals preceding it that "under our system of law, judicial power to grant a divorce is founded on domicile. Williams v. North Carolina, 1945, 325 U.S. 226, 229, 65 S. Ct. 1092, 89 L. Ed. 1577", this seems to imply that even the legislature of a state or territory cannot give its courts jurisdiction unless that jurisdiction is founded on domicile. And the rule is that where there is a difference in ruling in two circuits, the district court must follow the ruling of its own circuit.

■ The Burch case, supra, holds, in substance, that domicile is a prerequisite for jurisdiction to decree a divorce valid within the confines of the Virgin Islands itself. Therefore, any statute that does not sufficiently provide for domicile is incapable of giving the court jurisdiction. Thus, although this is a procedural statute setting forth the procedure for the court in finding prima facie evidence of domicile, if we do not hold to the view that the legislature has the power to fix any standard it sees fit for divorce effective within the confines of its borders, but we do hold to the concept that it must be founded on domicile, then we must go back to the question of the sufficiency of the standard set by this precedural statute. And this question we have already discussed in the first section of this opinion.

Third. We now discuss the question whether the concept of domicile as a prerequisite to jurisdiction, is being

superseded by the theory that in divorce cases like other cases, jurisdiction of the subject matter and of the parties thereto is sufficient to give jurisdiction, irrespective of any hard and fast rule that domicile of one of the parties must be within the state or territory. The new section 9(a) provides for personal service upon the defendant within the jurisdiction or appearance of the defendant in the action, either of which coupled with continuous residence for six weeks on the part of the plaintiff shall give the court jurisdiction of the action and of the parties thereto. If domicile is unnecessary then the Act is a valid one, notwithstanding the discussion in sections one and two of this opinion.

In 1903 the Supreme Court said in the case of Andrews v. Andrews, 188 U.S. 14, 23 S. Ct. 237, 244, 47 L. Ed. 366, that "Domicil (in South Dakota) was essential to give jurisdiction to the courts of such state to render a decree of divorce which would have extraterritorial effect," and "the appearance of one or both of the parties to a divorce proceeding could not suffice to confer jurisdiction over the subject-matter, where it was wanting because of the absence of domicil within the state" and that "The principle dominating the subject is that the marriage relation is so interwoven with public policy that the consent of the parties is impotent to dissolve it contrary to the law of the domicil."

It is noted here that while the court is concerned with the "extraterritorial" effect of such cases it said that bona fide domicile of the plaintiff was essential to jurisdiction and that without that essential element the court was without jurisdiction and the appearance of one or both of the parties could not supply it.

The first Williams v. North Carolina case, 317 U.S. 287, 63 S. Ct. 207, 87 L. Ed. 279, decided in 1942 is important here only in that the court repudiated the Haddock case saying, that it was incorrectly decided. However, in 1945

in the second Williams case, 325 U.S. 226, at page 229, 65 S. Ct. 1092, at page 1095, the court said, that: "Under our system of law, judicial power to grant a divorce — jurisdiction, strictly speaking — is founded on domicil. Bell v. Bell, 181 U.S. 175, 21 S. Ct. 551, 45 L. Ed. 804; Andrews v. Andrews, 188 U.S. 14, 23 S. Ct. 237, 47 L. Ed. 366. The framers of the Constitution were familiar with this jurisdictional prerequisite, and since 1789 neither this Court nor any other court in the English-speaking world has questioned it."

Under these decisions there could be no question of the fact that the Supreme Court considered domicile a prerequisite for jurisdiction. However, beginning with the case of Sherrer v. Sherrer, 1948, 334 U.S. 343, 68 S. Ct. 1087, 92 L. Ed. 1429, and Coe v. Coe, 1948, 334 U.S. 378, 68 S. Ct. 1094, 92 L. Ed. 1451, the court began to relax this rigid rule. In the Sherrer case, supra, under the doctrine of estoppel the court made the following observations:

"That the jurisdiction of the Florida court to enter a valid decree of divorce was dependent upon petitioner's domicile in that State is not disputed. . . . But whether or not petitioner was domiciled in Florida at the time the divorce was granted was a matter to be resolved by judicial determination.

". . . It is clear that respondent was afforded his day in court with respect to every issue involved in the litigation, including the jurisdictional issue of petitioner's domicile. Under such circumstances, there is nothing in the concept of due process which demands that a defendant be afforded a second opportunity to litigate the existence of jurisdictional facts.

". . . There is no reason to expect that the second decision will be more satisfactory than the first.

". . . If respondent failed to take advantage of the opportunities afforded him, the responsibility is his own. We do not believe that the dereliction of a defendant under such circumstances should be permitted to provide a basis for subsequent attack in the courts of a sister State on a decree valid in the State in which it was rendered.

292

"... But insofar as the rule of that case (the Andrews case) may be said to be inconsistent with judgment herein announced, it must be regarded as having been superseded by subsequent decisions of this Court. The Andrews case was decided prior to the considerable modern development of the law with respect to finality of jurisdictional findings.

"... The full faith and credit clause is one of the provisions incorporated into the Constitution by its framers for the purpose of transforming an aggregation of independent, sovereign States into a nation. If in its application local policy must at times be required to give way, such 'is part of the price of our federal system.' " 334 U.S. (343), at pages 348–355, 68 S. Ct. (1087), at page 1089.

Now, we note here that the court held that domicile was essential, and the relaxation of the rule is in the court's decision that the appearance of the defendant and his participation in the proceedings in Florida made the finding of domicile there final. It should also be noted that the dissenting opinion of Mr. Justice Frankfurter shows that he considered that opinion a relaxation of the rule in that respect. In his dissent, 334 U.S. at page 357, 68 S. Ct. at page 1097, he said: "It would certainly have been easier if from the beginning the Full Faith and Credit Clause had been construed to mean that the assumption of jurisdiction by the courts of a State would be conclusive, so that every other State would have to respect it."

Then in 1951 in the case of Johnson v. Muelberger, 340 U.S. 581, 71 S. Ct. 474, 95 L. Ed. 552, this doctrine was further expanded in the opinion of the court delivered by Mr. Justice Reed in which he stated the facts as follows: "After the death of Johnson's first wife in 1939, he married one Madeline Ham, and they established their residence in New York. In August 1942, Madeline obtained a divorce from him in a Florida proceeding, although the undisputed facts as developed in the New York Surrogate's hearing show that she did not comply with the juris-

dictional ninety-day residence requirement. The New York Surrogate found that 'In the Florida court, the decedent appeared by attorney and interposed an answer denying the wrongful acts but not questioning the allegations as to residence in Florida. The record discloses that testimony was taken by the Florida court and the divorce granted Madeline Johnson. Both parties had full opportunity to contest the juridictional issues in that court and the decree is not subject to attack on the ground that petitioner was not domiciled in Florida.' " 340 U.S. (581), at page 582, 71 S. Ct. (474) at page 475.

Here the Court reversed the New York court saying, beginning in 340 U.S. at page 585, 71 S. Ct. at page 477:

"In two cases, Williams I and II, 317 U.S. 287, 63 S. Ct. 207, 87 L. Ed. 279, and 325 U.S. 226, 65 S. Ct. 1092, 89 L. Ed. 1577, we held that domicile of one party to a divorce creates an adequate relationship with the state to justify its exercise of power over the marital relation, 317 U.S. at page 298, 63 S. Ct. at page 213; 325 U.S. at page 235, 65 S. Ct. at page 1097. The later Williams case left a sister state free to determine whether there was domicile of one party in an 'ex parte' proceeding so as to give the court jurisdiction to enter a decree. 325 U.S. at page 230, note 6, 237, dissent 277, 65 S. Ct. 1095, 1098, 1117; Esenwein v. Commonwealth, 325 U.S. 279, 281, 65 S. Ct. 1118, 1119, 89 L. Ed. 1608. Cf. Rice v. Rice, 336 U.S. 674, 69 S. Ct. 751, 93 L. Ed. 957. Three years later a question undecided in Williams II was answered. In Sherrer v. Sherrer, 334 U.S. 343, 68 S. Ct. 1087, 1097, 92 L. Ed. 1429, a Florida divorce, where both parties appeared personally or by counsel, was held by Massachusetts not to be entitled to full faith or credit in that state because both parties lacked Florida domicile. 320 Mass. 351, 358, 69 N.E.2d 801, 805. We reversed, saying: 'We believe that the decision of this Court in the Davis case [Davis v. Davis, 305 U.S. 32, 59 S. Ct. 3, 83 L. Ed. 26] and those in related situations are clearly indicative of the result to be reached here. Those cases stand for the proposition that the requirements of full faith and

credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree.' "

Thus, while we note that the court in its own statement says that "Facts developed in the New York Surrogate's hearing show that she did not comply with the jurisdictional ninety-day residence requirement." The court held that "In the light of the record before us we assume that the requirement of Florida for a residence of ninety days as a jurisdictional basis for a Florida divorce is no longer open as an issue upon return of these proceedings to the surrogate's court. Accordingly, the judgment under review is a final judgment." The New York Court of Appeals In re Johnson's Estate, 301 N. Y. 13, 92 N.E. 2d 44 under a remittitur had reversed and remanded the case to the surrogate and the New York Court of Appeals held that the Florida judgment finding jurisdiction to decree the divorce bound only the parties themselves. This the Supreme Court did not disturb except that it reversed the New York court in holding that it was binding on everyone.

Then in the case of Cook v. Cook, 342 U.S. 126, 72 S. Ct. 157, 96 L. Ed. 146, the court outlined the previous decisions as follows: "On this record we do not know what happened in the Florida divorce proceedings except that the Florida court entered a divorce decree in favor of petitioner and against Mann. So far as we know, Mann was a party to the proceedings. So far as we know, the issue of domicile was contested, litigated and resolved in petitioner's favor. If the defendant spouse appeared in the Florida proceedings and contested the issue of the wife's domicile,

295

Sherrer v. Sherrer, 334 U.S. 343, 68 S. Ct. 1087, 1097, 92 L. Ed. 1429, or appeared and admitted her Florida domicile, Coe v. Coe, 334 U.S. 378, 68 S. Ct. 1094, 92 L. Ed. 1451, or was personally served in the divorce state, Johnson v. Muelberger, 340 U.S. 581, 587, 71 S. Ct. 474, 477, 95 L. Ed. 552, he would be barred from attacking the decree collaterally . . ." 342 U.S. (126), at page 127, 72 S. Ct. (157), at page 159.

Subsequently, in the case of Sutton v. Leib, 342 U.S. 402, 72 S. Ct. 398, 96 L. Ed. 448, the court held that the important test was the question of which state had jurisdiction of the parties to the action, but does not refer to the matter of domicile (both states had found domicile in their respective states.) Here the court said:

"**Legal Effect of Nevada and New York Events.** Petitioner and Henzel were married in Nevada. Thereafter petitioner brought her putative husband before the New York court. Petitioner and Henzel subjected themselves to the jurisdiction of the New York court and its decree annulling their Nevada marriage was entered with jurisdiction, so far as this record shows, of the parties and the subject matter. The burden is upon one attacking the validity of a judgment to demonstrate its invalidity. That judgment is res judicata between the parties and is unassailable collaterally. As both parties were before the New York court, its decree of annulment of their Nevada marriage ceremony is effective to determine that the marriage relationship of petitioner and Henzel did not exist at the time of filing the present complaint in Illinois for unpaid alimony. The effect in Illinois of the New York declaration of nullity on the obligation for alimony is a matter of Illinois law hereinafter treated. The New York annulment determines the marriage relationship that is the marital status of petitioner and Henzel, just as any divorce judgment determines such relationship. If the Nevada court had had jurisdiction by personal service in the state or appearance in the case of Henzel and the first Mrs. Henzel, its decree of divorce would have been unassailable in other states. So as to the New York decree annulling the marriage, New York had such

jurisdiction of the parties and its decree is entitled to full faith throughout the Nation, in Nevada as well as in Illinois.

"The New York invalidation of the Nevada divorce of the Henzels stands in the same position. As Mrs. Henzel was neither personally served in Nevada nor entered her appearance, the Nevada divorce decree was subject to attack and nullification in New York for lack of jurisdiction over the parties in a contested action.

"This leads us to hold that the conclusion of the Court of Appeals quoted in note 2, supra [Sutton v. Leib, 7 Cir., 188 F.2d 766], is incorrect under the facts of this case. The marriage ceremony performed for petitioner and Henzel in Nevada must be held invalid because then Henzel had a living wife. The New York annulment held the Nevada marriage void. Nevada declares bigamous marriages void." 342 U.S. (402), at pages 407–409, 72 S. Ct. (398), at page 402.

■ ■ We also note, here, that the court says that the "conclusion of the Court of Appeals quoted in note 2, supra, is incorrect under the facts of this case." (That is the quotation in this opinion in section two from the Court of Appeals for the Seventh Circuit). If the Supreme Court had said it is incorrect "per se" there would be no doubt of the conclusion to be made of the discussion in section two of this opinion. This statement of the court leaves this question open. However, from the cases as we have reviewed them, there is certainly not sufficient basis for this court to say that the concept of domicile has been superseded by the rule that in divorce cases like other cases jurisdiction of the subject matter and of the parties is sufficient, irrespective of domicile. It appears that in all of these cases (Sherrer, Coe, Cook, Muelberger, and Sutton) the decision of the Supreme Court is based upon the assumption or the fact that domicile has been found by the court of the state granting the decree of divorce. Those cases, therefore, still stand for the proposition that domicile of one spouse is essential to jurisdiction, but in addition to that, jurisdiction of both parties is essential for the decree to

297

have extraterritorial effect in that the presence of both parties makes the finding of domicile res adjudicata and, therefore, makes the divorce decree final and unassailable anywhere.

██ This court is of the opinion, therefore, that there must be a finding of domicile based on the required statutory period in order to support a decree of divorce in the Virgin Islands. And this again brings us back to the discussion in section one of this opinion, as to whether the standard set by the legislature as prima facie evidence of domicile is a sufficient one. In view of that discussion, it is the opinion of this court that section 9(a) of the Divorce Law of the Virgin Islands does not confer jurisdiction by the procedure outlined therein because of the insufficiency of that procedure to prove a prima facie case of domicile.

The motion will, therefore, be denied on the grounds that domicile was not sufficiently established and, consequently, the Court is without jurisdiction of the matter. Accordingly, no decree will be entered and the case will be dismissed for lack of jurisdiction. Order may be so drawn.