EDWARD C. SHERRER *vs.* MARGARET E. SHERRER
(and a companion case between the same parties).

Berkshire.    September 17, 1946. — November 4, 1946.

Present: FIELD, C.J., QUA, RONAN, WILKINS, & SPALDING, JJ.

*Marriage and Divorce,* Foreign divorce, Jurisdiction. *Domicil. Constitutional Law,* Full faith and credit, Divorce. *Jurisdiction,* Divorce proceedings. *Minor. Probate Court,* Appeal, Report of material facts. *Words,* "Order in writing."

A letter to a register of probate by an appellant stating, "Please prepare" the papers in the case for transmission to this court, was an "order in writing" within G. L. (Ter. Ed.) c. 231, § 135.

A report of material facts, made by a judge of probate after the claiming of an appeal from a decree and after a request for such a report, not by the appellant but by the party to whom the decree was favorable and who therefore was not entitled to appeal, must be treated as a voluntary report.

An order in writing, seasonably given under G. L. (Ter. Ed.) c. 231, § 135, by an appellant to a register of probate for the preparation of the papers in the case for transmission to this court, was not vitiated by the subsequent filing of a voluntary report of material facts by the judge and need not be repeated after the filing of the report, even though the report upon its filing became a necessary part of the record for this court; and a motion by the appellee to dismiss the appeal on the sole ground of want of such a second order in writing was properly denied.

A finding that a wife did not acquire a domicil in Florida, implied from a finding that she did not intend to make her permanent home there, was

not plainly wrong on evidence that she left her home in Massachusetts where she was domiciled with her husband and went to Florida, where she brought a divorce proceeding immediately upon expiration of the period of residence required by a Florida statute for such a proceeding, and returned to Massachusetts a few months after obtaining a divorce.

The mere circumstances, that the plaintiff's allegation of a residence in Florida in a divorce proceeding there was denied in the defendant's answer and that there was some testimony on the subject of residence at a formal uncontested hearing of the case, did not show such genuine litigation and determination of that jurisdictional fact in the Florida proceeding that a decree of divorce therein was denied full faith and credit by a subsequent decree by a Massachusetts court in effect based on invalidity of the Florida decree for want of a domicil of either party in that State.

A decree of a Probate Court under G. L. (Ter. Ed.) c. 209, § 37, awarding to the father custody of minor children of parents living apart was proper on findings of suitability of environment for the children with him and unsuitability of environment for them with the mother.

PETITIONS, filed in the Probate Court for the county of Berkshire on June 28, 1945.

The cases were heard by *Hanlon*, J.

*F. M. Myers*, for the respondent.

*R. T. Capeless*, (*L. S. Cain*, *A. W. Chesney* & *R. A. Lewis* with him,) for the petitioner.

WILKINS, J. These are two petitions in the Probate Court of Berkshire County, one for a decree that the respondent has deserted the petitioner and that the petitioner is living apart from the respondent for justifiable cause, and the other for the custody of two minor children. From decrees in favor of the petitioner the respondent appeals. The testimony is reported, and the judge in each case made a report of the material facts found by him. G. L. (Ter. Ed.) c. 215, § 11. *Rubinstein* v. *Rubinstein*, 319 Mass. 568, 569. *Coe* v. *Coe*, *ante*, 295, 297.

1. We first consider an appeal of the petitioner from the denial of his motion to dismiss the respondent's appeal from the decree that the respondent has deserted the petitioner and that the petitioner is living apart from the respondent for justifiable cause. The motion was based upon an alleged failure to comply with G. L. (Ter. Ed.) c. 231, § 135, as amended, which requires that "the party

having the obligation to cause the necessary papers . . . to be prepared shall give to the . . . register . . . within ten days after the case becomes ripe for final preparation and printing of the record for the full court, an order in writing for the preparation of such papers and copies of papers for transmission to the full court of the supreme judicial court." The decree was dated October 8, 1945. The respondent made no request of the judge to report the material facts, but the petitioner made such a request on October 11. On October 23 the respondent appealed and filed a transcript of the evidence. On the same day the register received from the respondent a letter containing the following: "Please prepare for transmission to the Supreme Judicial Court all papers required to present appeal of respondent in the matter of Edward C. Sherrer vs. Margaret E. Sherrer." This was "an order in writing" within the meaning of G. L. (Ter. Ed.) c. 231, § 135. *Bass River Savings Bank* v. *Nickerson*, 302 Mass. 235, 237–238. On November 8 the judge filed a report of the material facts found by him. As the decree was entirely in favor of the petitioner, and he was not aggrieved thereby, his request for a report of the material facts was not by a "party entitled to appeal" under G. L. (Ter. Ed.) c. 215, § 11. *Donovan* v. *Donovan*, 223 Mass. 6, 7, and cases cited. *Olsen* v. *Olsen*, 294 Mass. 507, 509–510. *Walsh* v. *District Court of Springfield*, 297 Mass. 472, 474. *Ballard* v. *Maguire*, 317 Mass. 130. See *Murphy* v. *Donovan*, 295 Mass. 311, 312, 313. The report of material facts in the case at bar must be taken to have been voluntary. It might never have been made. The mere possibility of its being made could not have availed the respondent as a reason for delay in ordering the preparation of the papers for transmission to this court. Indeed the petitioner does not contend that the order was not timely when given. His contention is rather that the case ceased to be "ripe for final preparation and printing of the record for the full court" (*Moskow* v. *Murphy*, 310 Mass. 249), that the order was vitiated by the subsequent filing of the report of material facts, which was a necessary part of the record on appeal (*Boston Safe*

*Deposit & Trust Co.* v. *Wickham,* 254 Mass. 471, 473; *Martell* v. *Moffatt,* 276 Mass. 174, 177–178; *MacNevin* v. *MacNevin,* 319 Mass. 719, 721), and that, therefore, the respondent should have given another order for the preparation of the record within ten days after the filing of the report. We do not sustain this contention. The case having once become "ripe for final preparation and printing of the record" did not thereafter lose its ripeness in this respect by the making of a voluntary report of the material facts, even though such report had to be included in the record for this court. Any other conclusion would "promote confusion and uncertainty of practice" (*Hubbard* v. *Southbridge National Bank,* 297 Mass. 17, 20), and might result in nullifying a printed record at an indefinite future date. [1]

By way of precaution we state that we should not be understood as intimating that the requirement that the order be given "within ten days after the case becomes ripe for final preparation and printing of the record for the full court" would preclude the giving of the order before the ten days started to run. See *MacNevin* v. *MacNevin,* 319 Mass. 719. See also *Atherton* v. *Corliss,* 101 Mass. 40; *Young* v. *The Orpheus,* 119 Mass. 179, 185; *Reardon* v. *Cummings,* 197 Mass. 128; *Bay State Dredging & Contracting Co.* v. *W. H. Ellis & Son Co.* 235 Mass. 263, 267–268; *Carey* v. *Casey,* 245 Mass. 12; *Reagan* v. *Mayor of Fall River,* 260 Mass. 529, 531; *Nevins* v. *Board of Public Welfare of Everett,* 301 Mass. 502, 503. Compare *Levine* v. *Finkelstein,* 312 Mass. 483, 485.

There was no error in the denial of the petitioner's motion to dismiss the appeal.

2. We now consider the merits of the petition representing that the petitioner wishes to be enabled to convey his real estate as though he were sole, and alleging that the respondent has deserted the petitioner and that the petitioner is living apart from the respondent for justifiable cause. G. L.

---

[1] In the Probate Court there is no time limit for the filing of a report of material facts even when made under the statute. See, however, as to the Supreme Judicial Court and the Superior Court, G. L. (Ter. Ed.) c. 214, § 23, as appearing in St. 1945, c. 394, § 1.

(Ter. Ed.) c. 209, § 36. We summarize facts as found by the judge or by ourselves. *Lowell Bar Association* v. *Loeb*, 315 Mass. 176, 178. The parties were married in 1930, in New Jersey, and from 1932 until April 3, 1944, lived together at Monterey in this Commonwealth. On the last mentioned date the respondent, stating that she was leaving for a month's rest, took their two minor daughters with the petitioner's consent to St. Petersburg, Florida. She arrived in Florida April 4. For three weeks she and the children occupied a rented apartment. Thereafter they successively occupied two rented furnished cottages in that city. About April 14, 1944, Henry A. Phelps of Monterey, who for some time had been an intimate friend of the respondent and an acquaintance of the petitioner, and who knew that the respondent had gone to Florida, went to St. Petersburg, where he saw the respondent very frequently. On April 20 the respondent wrote the petitioner, stating that she did not care to go back to live with him, and returning travel money he had sent her. On July 6 she consulted an attorney in Florida, and on the same day signed a bill of complaint for divorce on the ground of extreme cruelty, which alleged that she had been a bona fide resident of Florida for ninety days. The bill of complaint was filed in the Circuit Court of the Sixth Judicial Circuit of Florida in and for Pinellas County. About July 10 the petitioner by mail received formal "notice to appear" by August 7. He retained Florida counsel, who entered a general appearance, and filed an answer, which, among other things, denied the allegations as to residence. Later the petitioner went to Florida, arriving November 9. At that time the respondent was employed as a waitress in a restaurant in St. Petersburg, and Phelps worked there in a lumber yard. On November 14, 1944, there was a hearing in the divorce proceeding, during which the petitioner's attorney was present, but the petitioner remained "in a side room." The respondent's attorney read into the record a stipulation of the parties, which, subject to the approval of the court, provided that custody of the children should be in the petitioner during the school term of each year and in the respondent the remainder of

each year. The respondent testified and was not cross-examined. The petitioner then entered the courtroom, and was questioned by the judge as to his ability to look after the children, and, when he had satisfied the judge in that respect, the hearing closed except for the deposition of a witness in corroboration of the respondent. On November 19 the petitioner returned to Monterey with the children. On November 29 the deposition was filed, and a final decree was entered awarding the respondent a divorce and awarding custody as stipulated. On December 1 the respondent and Phelps went through a marriage ceremony in Florida. They thereafter resided in the cottage which she had been occupying. Shortly after February 1, 1945, they came to Massachusetts, going first to Westfield, where Phelps's father was ill, and then to Monterey, where they arrived about February 5. There they occupied the house where the respondent and the petitioner had been living at the time of her departure for Florida. The petitioner was living with another family in Monterey. About February 12, 1945, Phelps was served with a summons in an action brought by the petitioner in the Superior Court, Berkshire County, for alienation of the affections of the respondent.

The judge found: "The respondent, in going to Florida, did not intend to make it her permanent home, but went there with the intention of meeting Mr. Phelps, obtaining a divorce from her husband, and then marrying Mr. Phelps. Her ultimate purpose at all times was to return to Massachusetts after accomplishing these things. The question of her domicil was not made an issue at the divorce hearing. The divorce, in effect, was uncontested. The respondent agreed before the case was heard that the petitioner could have custody of the children during the entire school year, and the petitioner then refrained from contesting the divorce." The respondent contends that these findings were plainly wrong. It is urged that the findings as to her intent in going to Florida "cannot stand in the light of the evidence." There was testimony tending to show, and the judge found, that the respondent's mother had been committed to a mental hospital; that the petitioner made

occasional references to this fact, which were disturbing to the respondent and resulted in friction; that she became nervous and upset; and that a sinus condition from which she suffered became worse. The petitioner testified: "She acted in such a way that I thought by telling her about her mother's condition it might straighten her out and help her to mend her ways with the children." The respondent testified that the petitioner told her that she had "a crazy look in . . . [her] eyes just like . . . [her] mother" and that she would be in the same institution as her mother within two years; that her fears about being committed had a bearing upon her decision as to going to Florida; that she intended to stay in Florida when she left; that her statements to the contrary made to her husband, to her daughter, and to friends were falsehoods; that she went to Florida on her doctor's advice; that she could not "stand it any longer"; that she could have gotten a divorce here, but "had to get away"; that her elder daughter attended school in Florida; that at the time of her marriage she intended to make her home permanently in Florida; that she considered her position as a waitress in a restaurant "a permanent job"; that she and Phelps returned to Massachusetts as a result of a letter to him advising of the serious illness of his father; that they remained in Massachusetts because of the action for alienation of affections; and that they kept the cottage in Florida for a month after February 5, 1945. The judge was not required to accept the respondent's testimony that her statements that she was leaving Massachusetts temporarily had been falsehoods. This is the usual situation of conflict in testimony. Nor were the findings open to the objection that mere disbelief of testimony does not constitute proof of facts to the contrary. See *Zarrillo* v. *Stone*, 317 Mass. 510, 512. A requirement for instituting divorce proceedings in Florida is that "the complainant must have resided" there for ninety days. Fla. Sts. (1941) § 65.02. This means domicil and not mere residence. *Wade* v. *Wade*, 93 Fla. 1004, 1007. See *Andrews* v. *Andrews*, 176 Mass. 92, 93–94; *Cohen* v. *Cohen*, 319 Mass. 31, 34; *Williams* v. *North Carolina*, 325

U. S. 226, 229.˙ The bill of complaint was signed by the respondent within a few days after the expiration of the minimum residence requirement. The fact that a wife leaves her husband and goes into another State, and there applies for a divorce soon after she is able to do so, warrants the inference that she goes there for that purpose. *Lyon* v. *Lyon,* 2 Gray, 367. *Chase* v. *Chase,* 6 Gray, 157, 162. "In *Smith* v. *Smith,* 13 Gray, 209, the presumption arising from such a fact is said by Chief Justice Shaw to be 'violent, if not conclusive.' See also *Sewall* v. *Sewall,* 122 Mass. 156." *Dickinson* v. *Dickinson,* 167 Mass. 474, 477. The early application for divorce and other evidence as to her intention amply justified the judge's finding by implication that she was not domiciled in Florida. *Commonwealth* v. *Kendall,* 162 Mass. 221. *Williams* v. *North Carolina,* 325 U. S. 226, 236–237.

The next contention is that the Probate Court decree was a denial of full faith and credit to the Florida divorce decree. The respondent relies upon *Davis* v. *Davis,* 305 U. S. 32, a case which we have interpreted "as resting on the basis that the jurisdictional facts were actually litigated and determined to exist in the court granting the divorce." *Cohen* v. *Cohen,* 319 Mass. 31, 35. *Bowditch* v. *Bowditch,* 314 Mass. 410, 416. *Rubinstein* v. *Rubinstein,* 319 Mass. 568, 571. *Coe* v. *Coe, ante,* 295, 302. The allegation as to residence in the bill of complaint, which was denied in the answer, did not constitute an actual litigation of the jurisdictional facts. We do not think that a different result was required because there was testimony on this subject from witnesses called by the respondent or because the petitioner's counsel was present without participating in the examination of the witnesses. An examination of the record shows that the judge's finding that the divorce was uncontested was not plainly wrong. The ruling in *Davis* v. *Davis,* 305 U. S. 32, was based chiefly upon decisions in cases not involving the marital relation and in which the paramount rights of the State were not involved (page 42). Any extension of that ruling to comprehend the facts of the present case, which disclose nothing more

than an agreement as to custody and a formal uncontested hearing, must come from the court which first pronounced that doctrine. In our opinion, to recognize the Florida decree as controlling in spite of facts which show that neither party was domiciled in that State would allow the parties, who are domiciled in this Commonwealth, to agree upon and achieve an undoing of their marriage by a specious indirection. We think that the judge's finding is not precluded by § 1 of art. 4 of the Constitution of the United States. *Andrews* v. *Andrews,* 188 U. S. 14, 41. *Williams* v. *North Carolina,* 325 U. S. 226, 238. *Esenwein* v. *Commonwealth,* 325 U. S. 279, 280–281.

3. There remains for consideration the decree respecting custody of the daughters, Beverly, aged eleven, and Gail, aged six. The court had jurisdiction to enter the decree under G. L. (Ter. Ed.) c. 209, § 37. *Gallup* v. *Gallup,* 271 Mass. 252, 257. *Bergeron* v. *Bergeron,* 287 Mass. 524, 530. The paramount issue is the welfare of the children. *Grandell* v. *Short,* 317 Mass. 605, 608. *Erickson* v. *Raspperry, ante,* 333, 335, and cases cited.

The judge made a separate report of the material facts found by him in this matter. We briefly state his findings other than those relating to the Florida divorce. The children and the petitioner lived with a family in a house in Monterey until the latter part of June. At that time the respondent went to that house during the absence of the petitioner, and forcibly removed Gail to the house in Monterey where Phelps and the respondent were living. Gail remained there in the actual custody of the respondent until about two weeks before the hearing (which took place November 7, 1945), when the respondent and Gail disappeared. Their whereabouts at the time of the hearing on the petition for custody were unknown. The judge also found in effect that the environment for the children with the father was proper, and that the house where Phelps and the respondent lived was an improper place for Gail to live. As to this factor the judge found: "The divorce having been found invalid, the respondent and Henry Phelps are not man and wife, and the consequent public

scandal of their living under the same roof provides an atmosphere of immorality which is unhealthy for Gail."
The findings were not plainly wrong and must stand.

*Decrees affirmed.*