JOHN HEARD vs. ROSAMOND GREGOR HEARD
(and a companion case [1]).

Middlesex.    December 6, 1946, September 14, 1948. — November 3,
1948.

Present: QUA, C.J., LUMMUS, DOLAN, & RONAN, JJ.

*Jurisdiction*, Divorce proceedings, Custody of child, Raising question of
    jurisdiction, Nonresident. *Marriage and Divorce*, Jurisdiction, Foreign
    divorce, Custody of child. *Estoppel. Domicil. Minor. Constitu-
    tional Law*, Full faith and credit, Divorce. *Parent and Child.*

On evidence reported on appeal from a decree for the petitioner in a
    proceeding brought by a husband against his wife in a Probate Court
    under G. L. (Ter. Ed.) c. 209, § 36, this court, contrary to the con-
    clusion reached by the trial judge, came to the conclusion that the
    respondent, who had been domiciled with the petitioner in Massa-
    chusetts, acquired a bona fide domicil in Nevada before bringing a
    divorce proceeding there and still had such domicil at the time of the
    entry of a judgment of divorce, where it appeared from the evidence
    that she went to Nevada intending to acquire a domicil in that State,
    in accordance with its laws, for the purpose of procuring the divorce,
    to make that State her permanent home and not to return to Massa-
    chusetts; and that she remained in Nevada for the time requisite
    to the bringing of the divorce proceeding there and until the entry
    of the judgment of divorce, meanwhile purchasing a house in Nevada,
    and was still living in that house with her children and had not returned
    to Massachusetts at the time of the entry of the decree here.
One was not estopped to attack collaterally in Massachusetts the juris-
    diction of a Nevada court to grant a divorce against him where, al-
    though he had been duly served with a summons in the Nevada
    proceeding, he had not appeared nor participated therein in any
    way.
A judgment of divorce, granted to a woman by a Nevada court after due
    summons to her husband and valid in that State according to its
    laws, must be regarded as valid by the courts of Massachusetts by
    reason of the full faith and credit clause of the Federal Constitution
    notwithstanding G. L. (Ter. Ed.) c. 208, § 39, even though it was
    granted for a cause occurring in Massachusetts while the parties were
    domiciled here and the woman went from here to Nevada for the
    purpose of procuring it, where it appeared that she had acquired a

---

[1] The companion case is a petition by the same petitioner against the
same respondent for custody of their minor child.

bona fide domicil in Nevada before bringing the divorce proceeding there and still had such domicil at the time of the entry of the judgment of divorce.

A Nevada court having jurisdiction to grant a divorce to a woman domiciled there, formerly domiciled with her husband in Massachusetts, also had jurisdiction to deal with the custody of a minor child of the parties who had been taken from Massachusetts to Nevada by his mother and was physically present in Nevada throughout the proceedings there.

A domicil of origin of a minor with his parents in Massachusetts, where his father remained domiciled, was not changed when his mother took him with her to Nevada and there acquired a separate domicil and secured a divorce.

Following the granting of a divorce to a woman by a Nevada court and a judgment by that court which was subject under the law of that State to modification for good cause and which awarded to the woman custody of a minor child of the parties physically present in Nevada but domiciled in Massachusetts by reason of his father's domicil here, a Massachusetts Probate Court, upon a petition by the father and a general appearance by the mother, had jurisdiction under G. L. (Ter. Ed.) c. 208, § 29, to change the custody of the child for good cause although he was not physically within Massachusetts, and a decree to that effect would not deny full faith and credit to the Nevada judgment in violation of the Federal Constitution.

Upon reported evidence, this court came to the conclusion, contrary to that reached by a judge of a Probate Court, that the welfare of a boy seven years of age, child of divorced parents, required that he remain in the custody of his mother, who had always cared for him and was an excellent mother and devoted to him.

The fact that a mother secretly removed her minor child to a distant State without his father's consent could not control the welfare of the child as the paramount consideration in determining the question of his custody as between his parents.

PETITIONS, filed in the Probate Court for the county of Middlesex on September 18, 1945.

The cases were heard by *Leggat,* J.

In this court the cases were submitted on briefs.

*R. P. Dellinger & W. J. Fitzgerald,* for the respondent.

*A. J. Daly & J. A. Daly,* for the petitioner.

DOLAN, J. These two cases come before us on the respondent's appeal from the decree entered by the judge in the first case adjudging that the respondent had deserted the petitioner and that he was living apart from her for justifiable cause (see G. L. [Ter. Ed.] c. 209, § 36), and on her appeal from the decree entered by the judge in the second case granting custody of John Heard, Junior, the

minor child of the parties, to the petitioner. The cases were heard together, the evidence is reported, and the judge made a consolidated report of material facts found by him. [1]

### THE FIRST CASE.

Material facts found by the judge in this case may be summed up as follows: The parties were married at Cambridge on June 26, 1939. The minor child was born to them on August 17, 1941. Until July 7, 1945, they lived together in the same house in Cambridge. The daughter of the respondent by a previous marriage, Ursula Marshall, generally known as Ursula Heard, lived with them as did their minor child. The title to the house in which they lived was held by the respondent as trustee under her mother's will, and the taxes thereon and capital expenditures in connection therewith were paid out of the trust estate. All other expenses of maintenance of the household were paid by the petitioner. The petitioner treated the respondent at all times kindly and provided adequate support for her. On July 7, 1945, no cause existed which would justify the respondent in leaving the petitioner. Prior to that date the respondent announced to the petitioner that she was going to Canada for a vacation which would last from six to eight weeks. The petitioner bought transportation for her and gave her $850 for the expenses of the vacation. He saw her off at the train at Boston on the evening of July 7 and bade her good-bye affectionately. The next morning he sent the child and Ursula to join the respondent in Canada. In fact, the respondent intended to go to Canada for but a short time, and then to go to Reno in the State of Nevada and procure a divorce. The representation that she was going to Canada for a vacation was false and was intended to deceive the petitioner. "Shortly prior to July 7, 1945,

---

[1] Before these cases were argued, the cases of *Coe* v. *Coe*, 320 Mass. 295, and *Sherrer* v. *Sherrer*, 320 Mass. 351, were decided by this court. Certiorari, however, was granted in those cases and they were argued before the Supreme Court of the United States at the October term, 1947, and were reversed by that court on June 7, 1948. On June 29, 1948, the parties in the present cases were granted permission to file supplemental briefs. The petitioner's counsel accordingly filed a supplemental brief, but the respondent's counsel did not.

[she] disclosed to at least one servant in their home her intention not to·come back from the pretended vacation and . . . instructed this servant to conceal from her husband this intention." The last communication the petitioner received from her while she was in Canada was a letter mailed from Montreal on August 3, 1945, in which she stated that the child was happy and at home, that the weather had been perfect, and that that was literally all she had to tell. She left Montreal on or about August 3, 1945, and arrived at Reno on or about August 9 or 10. She did not then intend to establish a domicil in Reno but intended to establish a fictitious residence there for the sole purpose of procuring a divorce. Before leaving Cambridge for Reno she had consulted lawyers, without the knowledge of the petitioner, relative to procuring a divorce. After she left Montreal her attorneys at first concealed her whereabouts, but revealed them after the petitioner had refused to agree to a divorce and had retained counsel. On September 18, 1945, the petitioner filed in the Probate Court the petition now before us. After arriving in Reno the respondent lived with the child at various lodging houses or ranches at or near Reno. On or about September 29, 1945, the respondent filed an action for a judgment of divorce in the Second Judicial District Court of the State of Nevada in and for the county of Washoe, alleging as cause extreme cruelty on the part of the petitioner toward her, and praying that she be given custody of the minor child of the parties. The petitioner did not appear in that proceeding, and he never was in Reno. On November 30, 1945, the Nevada court entered a judgment and decree granting the respondent here a final and absolute divorce from her husband, the petitioner here, restoring "each of the parties . . . to the status of an unmarried person," and awarding the custody of the minor child to the respondent. The petitioner has been at all times ready and willing to have the respondent return to live with him. The judge further found that the respondent did not in good faith acquire any domicil in Nevada and that her domicil, as well as that of the minor, · "was at the time of the commencement of these proceedings

and still is in Cambridge," and entered a decree on January 10, 1946, adjudging that the respondent had deserted the petitioner and that he was living apart from her ("his wife") for justifiable cause.

In the light of the decree entered by the judge, we interpret his finding, that "the respondent did not in good faith acquire any domicil in Nevada and that her domicil and that of . . . [the] minor child . . . was at the time of the commencement of these proceedings and still is in Cambridge," to mean that the judge impliedly found that the judgment or decree of divorce procured by the respondent in Nevada was null and void. Whether it is so null and void is the decisive question, since, if it is valid, the parties would not have been husband and wife when the judge heard the petition and entered the decree appealed from, as required by the statute under which the petition was brought, G. L. (Ter. Ed.) c. 209, § 36, [1] and therefore the judge would have been without authority to enter the decree. *Cohen* v. *Cohen*, 319 Mass. 31, 34, and cases cited. *Coe* v. *Coe*, 334 U. S. 378.

Since all the evidence is before us, all questions of law, fact and discretion are open for our decision. *Lowell Bar Association* v. *Loeb*, 315 Mass. 176, 178. Proceeding to examine the evidence in accordance with our duty under the familiar rule, we ourselves find the following facts: The respondent before leaving her husband on July 7, 1945, disclosed to others than the servant to whom the judge referred in his report that she was going to Reno to procure her divorce and that she did not intend to live with the petitioner again. After her short stay in Canada she did go to Reno intending to acquire a domicil there, in accordance with the law of the State of Nevada, for the purpose of procuring a divorce. She remained in Reno for the time required by the laws of the State of Nevada before filing her action for divorce. The cause alleged was "extreme cruelty," which is also a cause for divorce in this Commonwealth. G. L. (Ter. Ed.) c. 208, § 1. *Chapman* v. *Chapman*, 224 Mass. 427, 430. It

---

[1] Chapter 209, § 36, so far as here pertinent, provides as follows: "A probate court may upon petition of a husband or, if he is insane, of his guardian or next friend, enter a decree that said husband has been deserted by his wife or that he is living apart from her for justifiable cause . . . ."

is a proper inference on all the evidence that the cause alleged occurred in this jurisdiction. On November 5, 1945, the respondent purchased a house in Reno in which she was living, at the time of hearing and entry of decree in the court below, with the minor child and with her daughter Ursula when she was not attending college. The latter testified at the hearing before the judge that she resided in Reno, Nevada, with the respondent. The respondent, whose testimony was taken by deposition, testified that in going to Nevada she intended to make Reno her permanent home. At the time of entry of decree in the court below she had not returned to Massachusetts. In the divorce action filed in the Nevada court on September 28, 1945, entitled "Rosamond Gregor Heard, Plaintiff, vs. John Heard, Defendant," the petitioner here was summoned to appear within thirty days after the service of the summons to defend the action "brought to recover a judgment, awarding to [the] plaintiff an absolute decree of divorce from [the] defendant, and the sole care, custody and control of John Heard . . . [their minor child] together with an order requiring [the] defendant to pay to plaintiff the sum of $250 per month for the support of plaintiff and said minor child . . .." In the "judgment and decree" of divorce entered in the Nevada court, it was recited in substance that the defendant (the petitioner here) was regularly served with summons, that more than thirty days had expired since service, that no answer, pleading or appearance had been filed by him or in his behalf, and that his default had been duly entered. No contention is made by the petitioner that there was any violation of procedural due process. On all the evidence we are unable to concur in the finding of the judge that the respondent in going to Nevada did not intend to establish a domicil there but intended to establish a fictitious residence there and that her domicil continues to be in Massachusetts, being of opinion that the proper conclusion on the evidence is that, while the respondent went to Nevada for the purpose of procuring a divorce from the petitioner, she intended to acquire a domicil there in accordance with its laws, that she did not intend to and had

not in fact returned to this Commonwealth when the present petition was heard and decree was entered in the court below, and that she did acquire a bona fide domicil in [Nevada under the laws of that State before bringing her action for divorce there which also existed at that time and at the time of entry of judgment therein. The evidence discloses that the acts of the respondent have been consistent with her expressed intent to make her permanent home in Nevada.

Before proceeding to the determination of the decisive issue as to the jurisdiction of the Nevada court to entertain and adjudicate the divorce action involved, it is appropriate to consider whether it is open to the petitioner to attack the validity of the judgment entered therein. We are of opinion that, since he did not appear or participate in the divorce proceedings in any way, he is not estopped from attacking its validity. *Williams* v. *North Carolina*, 317 U. S. 287; *S. C.* 325 U. S. 226. *Estin* v. *Estin*, 334 U. S. 541. In this respect the case is distinguishable from the *Coe* [1] and *Sherrer* [2] cases, recently decided by the Supreme Court of the United States, in which it was held in part that the party attacking the jurisdiction of the courts of Nevada and Florida, respectively, who had appeared in and participated in the respective divorce actions and had had full opportunity to be heard therein, was estopped to attack the jurisdiction of the courts to entertain and adjudicate them.

In support of his contention that the Nevada court did not have jurisdiction to entertain the action and to enter the judgment or decree of divorce in question, and that the judgment or decree is null and void, the petitioner relies largely upon the provisions of G. L. (Ter. Ed.) c. 208, § 39, and upon *Andrews* v. *Andrews*, 176 Mass. 92, 96, affirmed 188 U. S. 14, and other cases in which the *Andrews* case has been followed by this court. Chapter 208, § 39, provides as follows: "A divorce decreed in another jurisdiction according to the laws thereof by a court having jurisdiction of the

---

[1] *Coe* v. *Coe*, 334 U. S. 378, reversing *Coe* v. *Coe*, 320 Mass. 295.

[2] *Sherrer* v. *Sherrer*, 334 U. S. 343, reversing *Sherrer* v. *Sherrer*, 320 Mass. 351.

cause and of both the parties shall be valid and effectual in this commonwealth; but if an inhabitant of this commonwealth goes into another jurisdiction to obtain a divorce for a cause occurring here while the parties resided here, or for a cause which would not authorize a divorce by the laws of this commonwealth, a divorce so obtained shall be of no force or effect in this commonwealth." It is upon the latter provision of the statute that the petitioner most largely relies.

The United States Constitution, art. 4, § 1, provides, "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof." The act of May 26, 1790, 1 U. S. Sts. at Large, 122, as amended, U. S. Rev. Sts. § 905, U. S. C. (1940 ed.) Title 28, § 687, provides in part," . . . And the said records and judicial proceedings . . . shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken." See *Coe* v. *Coe*, 334 U. S. 378.

District Courts in Nevada have power to decree divorces in appropriate cases under Nev. Comp. Laws, 1929, § 9460, as amended. In the State of Nevada its courts recognize domicil of one of the parties as a prerequisite to divorce jurisdiction. *Latterner* v. *Latterner*, 51 Nev. 285, 290. See *Coe* v. *Coe*, 334 U. S. 378; *Williams* v. *North Carolina*, 317 U. S. 287; *Bowditch* v. *Bowditch*, 314 Mass. 410, 415. Interpreting the decision of the court in *Williams* v. *North Carolina*, 317 U. S. 287, this court in *Bowditch* v. *Bowditch*, 314 Mass. 410, 415, said in part that a domicil by one of the parties in the State in which the divorce was granted is essential to jurisdiction. There "is usually deemed to be an underlying requirement, implied either from the language of the statute or from the inherent nature of the proceedings, that at least one of the parties be actually 'domiciled' within the state, whether or not they were married under its laws." Nelson on Divorce and Annulment (2d ed.) § 21.12. *Andrews* v. *Andrews*, 188 U. S. 14. *Foss* v. *Foss*, 105 Conn. 502.

*Bonner* v. *Reandrew,* 203 Iowa, 1355. *Turner* v. *Turner,* 85 N. H. 249. That is a fundamental principle. *Bergeron* v. *Bergeron,* 287 Mass. 524, 528. *Cohen* v. *Cohen,* 319 Mass. 31, 34, and cases cited. We have already stated that we do not concur in the finding of the judge that the respondent did not have a bona fide domicil in Nevada but merely established a fictitious residence there, and that we have found that she went to the State of Nevada intending to acquire a domicil there for the purposes of divorce in accordance with the law of the State of Nevada, that she did not intend to return to this Commonwealth, that on the contrary she intended to make a permanent home there, and that her acts have been consistent with that intention. We are of opinion that she acquired a legal domicil in the State of Nevada before bringing her action for divorce and complied with the laws of that State in acquiring that domicil, [1] that the Nevada court had jurisdiction of the action, and that the judgment rendered therein is a valid judgment under the laws of the State of Nevada. In so far as the order for custody provided for therein is concerned, the judgment was also valid. Since the child was living in Reno at the times of the bringing of the action and of the entry of the judgment, the Nevada court, under the broad principles of the police power, had jurisdiction of that subject matter. Nev. Comp. Laws 1929, § 9462. *Black* v. *Black,* 48 Nev. 220. *Atkins* v. *Atkins,* 50 Nev. 333. See *Stearns* v. *Allen,* 183 Mass. 404, 409; *Schmidt* v. *Schmidt,* 280 Mass. 216, 218–219; G. L. (Ter. Ed.) c. 201, § 1; c. 208, § 29. [2]

The question remains whether the contention made by the petitioner that the present case is governed by the provision

---

[1] Section 9460 of the Nevada Compiled Laws, 1929, as amended by St. 1931, c. 97, § 1, provides as follows: "Divorce from the bonds of matrimony may be obtained by complaint, under oath, to the district court of any county in which the cause therefor shall have accrued, or in which the defendant shall reside or be found, or in which the plaintiff shall reside, or in which the parties last cohabited, or if plaintiff shall have resided six weeks in the state before suit be brought, for the following causes, or any other causes provided by law." Among the causes set forth in that statute is "Extreme cruelty in either party."

[2] The question of the jurisdiction of the Probate Court to entertain the petition for custody of the child will be more fully considered in connection with that petition (the second case presently before us).

of G. L. (Ter. Ed.) c. 208, § 39, that "if an inhabitant of this commonwealth goes into another jurisdiction to obtain a divorce for a cause occurring here while the parties resided here, or for a cause which would not authorize a divorce by the laws of this commonwealth, a divorce so obtained shall be of no force or effect in this commonwealth," can be sustained.

In *Andrews* v. *Andrews*, 188 U. S. 14, affirming *Andrews* v. *Andrews*, 176 Mass. 92, it was held that this Commonwealth contravened no Federal right in enacting § 41 of c. 146 of its Public Statutes which was the same in terms as G. L. (Ter. Ed.) c. 208, § 39, relied on by the petitioner. The *Andrews* case is fully discussed in *Sherrer* v. *Sherrer*, 334 U. S. 343, reversing *Sherrer* v. *Sherrer*, 320 Mass. 351, the court saying that it presented variations from the situation in the *Sherrer* case, but that "insofar as the rule of that case may be said to be inconsistent with judgment herein announced, it must be regarded as having been superseded by subsequent decisions of this Court. The *Andrews* case was decided prior to the considerable modern development of the law with respect to finality of jurisdictional findings. One of the decisions upon which the majority of the Court in that case placed primary reliance, *Wisconsin* v. *Pelican Insurance Co.*, 127 U. S. 265 (1888), was, insofar as pertinent, overruled in *Milwaukee County* v. *White Co.*, 296 U. S. 268 (1935). The *Andrews* case, therefore, may not be regarded as determinative of the issues before us" (page 353). The court also said in part that "the recognition of the importance of a State's power to determine the incidents of basic social relationships into which its domiciliaries enter does not resolve the issues of this case. This is not a situation in which a State has merely sought to exert such power over a domiciliary. This is, rather, a case involving inconsistent assertions of power by courts of two States of the Federal Union and thus presents considerations which go beyond the interests of local policy, however vital. . . . The full faith and credit clause is one of the provisions incorporated into the Constitution by its framers for the purpose of transforming an aggregation of independent, sovereign States into a

nation. If in its application local policy must at times be required to give way, such 'is part of the price of our federal system.' *Williams* v. *North Carolina*, 317 U. S. 287, 302 (1942). [See *Estin* v. *Estin*, 334 U. S. 541.] This is not to say that in no case may an area be recognized in which reasonable accommodations of interest may properly be made. . . . It is one thing to recognize as permissible the judicial reexamination of findings of jurisdictional fact where such findings have been made by a court of a sister State which has entered a divorce decree in ex parte proceedings. It is quite another thing to hold that the vital rights and interests involved in divorce litigation may be held in suspense pending the scrutiny by courts of sister States of findings of jurisdictional fact made by a competent court in proceedings conducted in a manner consistent with the highest requirements of due process and in which the defendant has participated. . . . And where a decree of divorce is rendered by a competent court under the circumstances of this case, the obligation of full faith and credit requires that such litigation should end in the courts of the State in which the judgment was rendered" (pages 354–356). The same reasoning was adopted in *Coe* v. *Coe*, 334 U. S. 378, by the court, and the same result was reached as in the *Sherrer* case.

It thus appears that in the cases just referred to the court was of opinion that the *Andrews* case presented variations from the *Sherrer* and *Coe* cases, and held that the *Andrews* case must be considered to be superseded by subsequent decisions of the court in so far as that case may be said to be inconsistent with the judgments therein announced. We interpret that to mean that that is so only to the extent that in the *Andrews* case attack was permitted on the jurisdiction of the court of another State to decree the divorce in question by the defendant in that proceeding who, as in the *Sherrer* and *Coe* cases, had appeared and participated therein and had had full opportunity to be heard. That this may not be done constitutionally is the basis of the decisions of the Supreme Court of the United States in the *Sherrer* and *Coe* cases. And in the *Sherrer*

and *Coe* cases the Supreme Court of the United States recognized in effect that judicial reëxamination of findings of jurisdictional fact is permissible "where such findings have been made by a court of a sister State which has entered a divorce decree in ex parte proceedings."

In the present case the decree attacked by the petitioner was entered in ex parte proceedings and, as we have already said, accordingly the petitioner is not estopped to attack its validity. On the evidence, however, we have found, as already stated, that the respondent had acquired a bona fide domicil in Reno at the time that she brought her action, that it existed at the time of entry of judgment in the Nevada court after service of due process on the petitioner here, see *Williams* v. *North Carolina,* 317 U. S. 287; *S. C.* 325 U. S. 226, and that the judgment of the Nevada court is valid and final in the State of Nevada. That having been resolved, we are of opinion that the provisions of G. L. (Ter. Ed.) c. 208, § 39, cannot avail the petitioner. Jurisdiction being found by us to have existed in the Nevada court to enter the judgment here under attack, that judgment cannot be pronounced null and void by us simply because the cause for which the divorce was granted was one which occurred in this Commonwealth. Having jurisdiction of the action for divorce, the Nevada court was free to exercise its jurisdiction for any of the causes defined in Compiled Laws of Nevada, 1929, § 9460, as amended, unrestricted by the provisions of G. L. (Ter. Ed.) c. 208, § 39. Accordingly the judgment or decree in question of the Nevada court is conclusive here and must be accorded full faith and credit under art. 4, § 1, of the Federal Constitution.

The decree entered in the Probate Court is reversed and instead a final decree is to be entered dismissing the petition.

*So ordered.*


### THE SECOND CASE.

This second case is a petition for custody of John Heard, Junior, the minor child of the parties. The child was born to the parties on August 17, 1941, while they were living

together in Cambridge. After hearing, the judge entered a decree on January 10, 1946, awarding the custody of the child to the petitioner, and the respondent appealed.

The evidence is reported, and the judge made a consolidated report of the material facts found by him in the first and in this case. We incorporate herein by reference the particular facts set out in our opinion in the first case as having been found by the judge and also those there recited as having been found by us. The contentions of the respondent are, first, that the decree or judgment of the Nevada court in which she was awarded custody of the child must be given full faith and credit under the Federal Constitution and, second, that the evidence does not support the decree entered by the judge awarding custody of the child to the petitioner.

We proceed to the consideration of the respondent's first contention. At the outset, by reason of our opinion in the first case, it must be taken as settled that the Nevada court had jurisdiction not only of the action for divorce in question, but also in connection therewith of the custody of the child, who was resident within the borders of the State of Nevada when the action for divorce was filed and judgment was entered therein. He was not in this Commonwealth when the present petition was brought, or when it was heard, or when decree was entered by the judge thereon. So far as appears, he has not returned to this Commonwealth since he was taken by his mother to Nevada, who likewise was not physically in the Commonwealth at those times, or so far as appears since she went to Nevada. The question therefore arises whether the Probate Court was bound by the judgment of the Nevada court.

The present petition was filed in the Probate Court on September 18, 1945. At that time the parties were husband and wife. The petition was apparently brought under the provisions of G. L. (Ter. Ed.) c. 209, § 37, which provides as follows: "If the parents of minor children live apart from each other, not being divorced, the probate court for the county in which said minors or any of them

are residents or inhabitants, upon petition of either parent, or of a next friend in behalf of the children after notice to both parents, shall have the same power to make decrees relative to their care, custody, education and maintenance, and to revise and alter such decrees or make new decrees, as the superior court has relative to children whose parents are divorced." This statute contemplates the existence of the marital relation between the parents. It follows from our decision in the first case that at the time of hearing of the present petition and entry of decree thereon the marital relation, an essential to proceedings under c. 209, § 37, no longer existed. It is unnecessary to decide whether the jurisdiction existing when the petition was filed continued notwithstanding the changed relationship of the parties, since by G. L. (Ter. Ed.) c. 208, § 29, it is provided as follows: "If, after a divorce has been decreed in another jurisdiction, minor children of the marriage are inhabitants of or residents in this commonwealth, the superior or probate court for the county in which said minors or any of them are inhabitants or residents, upon petition of either parent. or of a next friend in behalf of the children, after notice to both parents, shall have the same power to make decrees relative to their care, custody, education and maintenance, and to revise and alter such decrees or make new decrees, as if the divorce had been decreed in this commonwealth." The child's domicil is that of his father, the petitioner, and notwithstanding his removal by the respondent to the foreign State he continues an inhabitant of this Commonwealth, where his father, the petitioner, has always lived. *Glass* v. *Glass*, 260 Mass. 562, 564–565, and cases cited.[1] In the absence of any question of conflict of jurisdiction, such as that presented here, the Probate Court would have jurisdiction of the present petition notwithstanding that the child was not within our borders. What is

---

[1] When the *Glass* case was decided the statute, G. L. c. 208, § 29, referred only to minor children who were "inhabitants" of the Commonwealth. Thereafter by St. 1931, c. 327, § 1, G. L. c. 208, § 29, was amended by striking out that section and inserting a new section in the form set out above which includes minor children who are residents as well as those who are inhabitants of the Commonwealth.

the effect of the judgment of the Nevada court awarding the custody of the child to the respondent here, particularly in the light of the facts that the child was not within our borders when the present petition was filed, heard and determined, and so far as appears is not within our borders now? The recent case of *New York* v. *Halvey*, 330 U. S. 610,[1] throws some light on the question just proposed. In the *Halvey* case the facts are summed up in the opinion of the court as follows: "The Halveys were married in 1937 and lived together in New York until 1944. In 1938 a son was born. Marital troubles developed. In 1944 Mrs. Halvey, without her husband's consent, left home with the child, went to Florida, and established her residence there. In 1945 she instituted a suit for divorce in Florida. Service of process on Mr. Halvey was had by publication, he making no appearance in the action. The day before the Florida decree was granted, Mr. Halvey, without the knowledge or approval of his wife, took the child back to New York. The next day the decree was entered by the Florida court, granting Mrs. Halvey a divorce and awarding her the permanent care, custody, and control of the child. Thereupon she brought this habeas corpus proceeding in the New York Supreme Court, challenging the legality of Mr. Halvey's detention of the child. After hearing, the New York court ordered (1) that the custody of the child remain with the mother; (2) that the father have rights of visitation including the right to keep the child with him during stated vacation periods in each year, and (3) that the mother file with the court a surety bond in the sum of $5,000, conditioned on the delivery of the child in Florida for removal by the father to New York for the periods when he had the right to keep the child with him. . . . Both the Appellate Division . . . and the Court of Appeals . . . affirmed without opinion. The case is here on a petition for a writ of certiorari which we granted because it presented an important problem under the Full Faith and Credit Clause of the Constitution.

---

[1] The *Halvey* case was decided after the decree in the present case had been entered by the judge of probate.

Article IV, § 1" (pages 611–612). In the course of the opinion the court said in substance that the custody decree entered in the Florida court was not irrevocable and unchangeable; that under Florida law the welfare of the child is the chief consideration in shaping decrees of custody or in subsequently modifying or changing them, but that the inherent rights of parents to enjoy the society and association of their offspring, with reasonable opportunity to impress upon them a father's or a mother's love and affection in their upbringing, must be regarded as an important consideration in adjusting the right of custody as between parents in ordinary cases. The court further said that "It was held in *Meadows* v. *Meadows*, 78 Fla. 576, . . . that 'the proper custody of the minor child is a proper subject for consideration by the chancellor at any time, even if facts in issue could have been considered at a previous hearing, if such facts were not presented or considered at a former hearing.' Or, as stated in *Frazier* v. *Frazier*, 109 Fla., p. 168, . . . a custody decree 'is not to be materially amended or changed afterward, unless on altered conditions shown to have arisen since the decree, or because of material facts bearing on the question of custody and existing at the time of the decree, but which were unknown to the Court and then only for the welfare of the child.' The result is that custody decrees of Florida courts are ordinarily not res judicata either in Florida or elsewhere, except as to the facts before the court at the time of judgment" (page 613). Continuing the court said, "Respondent did not appear in the Florida proceeding. What evidence was adduced in that proceeding bearing on the welfare of the child does not appear. But we know that the Florida court did not see respondent nor hear evidence presented on his behalf concerning his fitness or his claim 'to enjoy the society and association' of his son. *Frazier* v. *Frazier*, 109 Fla., p. 169 . . . . It seems to us plain, therefore, that under the rule of *Meadows* v. *Meadows*, *supra*, the Florida court would have been empowered to modify the decree in the interests of the child and to grant respondent the right of visitation, if he had applied

to it rather than to the New York court and had presented his version of the controversy for the first time in his application for modification.  So far as the Full Faith and Credit Clause is concerned, what Florida could do in modifying the decree, New York may do" (pages 613–614).  And the court held that "a judgment has no constitutional claim to a more conclusive or final effect in the State of the forum than it has in the State where rendered" (page 614);  that the New York court, having the child and both parents before it, had a full hearing and determined that the welfare of the child and the interests of the father warranted a modification of the custody decree; that it was not shown that the New York court in modifying the Florida decree exceeded the limits permitted under Florida law;  and that there was therefore a failure of proof that the Florida decree received less credit in New York than it had in Florida.  In view of the narrow ground on which the court rested the decision they deemed it unnecessary to consider several other questions argued, among them whether Florida at the time of the original decree had jurisdiction over the child, the father having removed him from the State after the proceedings started but before the decree was entered.

Mr. Justice Jackson concurred in the result reached in the opinion of the court in the *Halvey* case "on the ground that the record before . . . [the court] does not show jurisdiction in the Florida Court."  It is a fair inference that Mr. Justice Jackson had in mind that, when the decree was entered in the Florida court, the child was not within the borders of the State of Florida.  Mr. Justice Frankfurter and Mr. Justice Rutledge delivered concurring opinions, taking in substance the position that the jurisdiction of the Florida court in making the custodial decree was doubtful, but that, apart from what the Florida court had previously done, New York, which had actual control of the child, was justified in exercising its powers in behalf of the child; and that the duty to respect the Florida judgment arose only if there was legal power in the Florida court to enter the custodial decree, and if in the Florida courts themselves

the decree was not subject to the kind of modification which New York made.

As we interpret the opinions in the *Halvey* case, it would seem that the gist of the decision is that the New York court had jurisdiction of the parties and of the child, that since the decree of the Florida court was subject to modification by that court the New York court could also enter the decree under consideration, and that its entry was not violative of the full faith and credit clause of the Federal Constitution.

In the present case the respondent, though she did not appear in person at the hearing of the present petition, did appear generally by counsel and thus submitted to the jurisdiction of the court below. The Probate Court had jurisdiction of the parties, and of the subject by virtue of the inhabitancy of the child in this Commonwealth. G. L. (Ter. Ed.) c. 208, § 29. As in the *Halvey* case the petitioner here did not appear in the action of his wife in the Nevada court, and that court "did not see . . . [him] nor hear evidence presented on his behalf concerning his fitness or his claim 'to enjoy the society and association' of . . . [the child]." *New York* v. *Halvey*, 330 U. S. 610, 613–614. Under the laws of Nevada the decree in question was not irrevocable but was subject, as are such decrees in most jurisdictions, to be modified for good cause. Nev. Comp. Laws, 1929, § 9462. *Silva* v. *Second Judicial District Court*, 57 Nev. 468. *Abell* v. *Second Judicial District Court*, 58 Nev. 89. *Fleming* v. *Fleming*, 58 Nev. 179. *Nevada* v. *First Judicial District Court*, 61 Nev. 269, 275–276. What the Nevada court could do the court below could do. See G. L. (Ter. Ed.) c. 208, §§ 28, 29. By virtue of the fact that the child here concerned is an inhabitant of this Commonwealth, that is, has his legal domicil here, that of his father, we conclude that as strict matter of law, notwithstanding that the child was not within our borders when the present proceeding was begun and determined in the Probate Court, that court had jurisdiction thereof. We are thus brought to a consideration of the present petition on the merits.

In addition to the facts set forth in our opinion in the first

case as having been found by the judge and to the facts therein set forth as having been found by us, all of which have been incorporated herein by reference, the judge in his report of material facts found in substance as follows: The "respondent is an extremely selfish woman and very egocentric and suffers from an unusually high strung nervous temperament. In addition she has in recent years acquired an unusual and morbid interest in matters pertaining to sex. She has displayed a disposition to insist upon having her own way, no matter how short sighted it might be or how injurious to herself or others toward whom she should be expected to have affection. On one occasion since her marriage she has attempted to commit suicide. Since her marriage she has been constantly and morbidly interested in her physical condition, health and in ailments from which she has either actually suffered or has feared she is going to suffer. She has visited and consulted a number of different doctors, including a psychiatrist. She has also at various times been a patient in hospitals. While it is not possible to characterize her as merely a hypochondriac, she is a woman of most unusual preoccupation over matters pertaining to her physical condition. Her marriage to the petitioner, a man of some financial means and willing to meet any financial obligation for medical treatment for his wife, has enabled Mrs. Heard to indulge in her propensities for all sorts of medical treatment and consultations. Her conduct in deceiving her husband, taking money from him for a supposed vacation, while living with him in apparently normal relation, and at the same time intending to leave him and take the child away, is I find typical of her whole character. She is not a suitable person to have custody of the child. By her conduct in secretly removing the child to Nevada without the knowledge and consent of his father, she has made it as a practical matter impossible to consider any division of custody between the parents, and has confronted the court with the necessity of entering a decree of custody in favor of one or the other. Upon all the evidence I find that the best interests of John Heard, Junior, require that his father, the petitioner, shall have custody." The

judge further found that the petitioner has at all times been an affectionate father and is a suitable person to have the custody of the child; and that since he learned that the respondent was not going to return to their home, he has been willing at all times to be reconciled to her and to resume living together as husband and wife if she will return to their home in Cambridge, which is owned by the respondent as trustee under the will of her mother.

Examining the evidence in accordance with our duty under the familiar rule, we are of opinion that the findings of the judge that the respondent is not a suitable person to have the custody of the child and that his welfare requires that the petitioner be given his exclusive custody are plainly wrong. The evidence discloses that the child is now but seven years of age, that he has always been cared for by his mother, and that she is devoted to him. The petitioner testified that, up to the time when the respondent separated from him, she had been an excellent mother. All of the witnesses who were familiar with the family life of the parties expressed the opinion that the respondent was a devoted mother and a suitable person to have the custody of the child. The evidence does support the finding of the judge that on one occasion the respondent attempted to commit suicide. The evidence discloses that in August, 1940, a little short of six years before the hearing of the present petition in the court below and a year before the child was born, the respondent took an overdose of veronal tablets with the intent to commit suicide, that she was taken to a hospital, and that during the course of her recovery she expressed regret at her action. The doctor who attended her on that occasion knew the parties socially and professionally. He had also attended the respondent on previous and subsequent occasions. He testified that prior to the incident just referred to the respondent had had an attack of rheumatic fever, that she had had attacks before, that she was "emotionally strung," that she had consulted several doctors, that she was apprehensive, but that this condition grew less after the child was born. This witness also testified that he had treated the respondent from time

to time up to about a year before the time of the hearing in the court below, that her trouble was due to "herself and her home life," that he had occasion to observe her care of the child, and that she was a "very good" mother. There was evidence of improper conduct on the part of the petitioner toward the respondent the natural effect of which was to disturb and distress her emotionally and to make her apprehensive. There is nothing in the evidence to show that since her attempted suicide the respondent has exhibited any disposition toward suicide, or to show that her emotional nature has in any way detracted from her care of the child or has had any untoward effect upon him.

In his report of material facts the judge has stressed the improper conduct of the respondent in secretly removing the child to Nevada without the consent of the petitioner. But this conduct on her part cannot be permitted to interfere with the welfare of the child, the paramount and governing consideration. As was said by this court in *Hersey* v. *Hersey*, 271 Mass. 545, where the child, whose custody had been awarded in divorce proceedings here to her mother, had been removed by her from the Commonwealth without the consent of the child's father or of the court (G. L. c. 208, § 30), "This is not a proceeding to discipline the respondent for her shortcomings. It is not a proceeding to reward the petitioner for any wrong which he may have suffered. . . . The governing principle by which the court must be guided in deciding the issues raised is the welfare of the child. That is so both as matter of law and as matter of humanity" (page 555). Concerning the finding of the judge that the respondent in recent years has "acquired an unusual and morbid interest in matters pertaining to sex," there is no evidence of any immoral conduct on her part, and it cannot quite be said that the entire evidence discloses that any interest displayed by the respondent in matters pertaining to sex was abnormal. We have considered all of the arguments advanced by the petitioner in support of his contention that the respondent is not a suitable person to have the custody of the child. On all the evidence we do not so find.

The evidence discloses that in the custody of the respond-

ent the child will have the devoted care of an excellent mother, that he will have the advantage of the society of his mother's daughter Ursula, his half sister, who has assisted in his care and has been a member of the respondent's household since his birth, and that the climate in which he dwells with the respondent is an excellent one in which to establish his health, which is that of a delicate child. The respondent has an income in her own right of about $6,000 a year. On the other hand the petitioner's plans for the child, if given his custody, are to provide the child with the best servants possible and the very best governess he can secure to look after his home education, to send him to the best school "around here" when he reaches school age, and when he gets to the age of going to boarding school to send him to the very best boarding school he can find. Such a program in our view, as compared with having the child of such tender years under the care of a devoted mother, would not seem to be presently for the welfare of the child.

On all the evidence we are of opinion that the proper conclusion is that the respondent is a suitable person to have the custody of the child and that his welfare requires that he remain in her custody. Accordingly the decree entered by the judge is reversed and instead a final decree is to be entered that the child remain in the custody of the respondent, without prejudice to the right of the petitioner to petition at any time in the future for a decree fixing reasonable times at which he may see the child or have him with him, upon such conditions as the court may deem proper, and without prejudice to the right of the respondent to petition that an allowance be made for the support of the child to be paid by the petitioner.

*So ordered.*