**Margaret Mann RYAN, Plaintiff,**

v.

**John Robert RYAN, Defendant.**

**Civ. A. No. 2702-54.**

United States District Court
District of Columbia.

Oct. 27, 1954.

Jean M. Boardman, Ethelbert B. Frey, Washington, D. C., for plaintiff.

Robert S. Caviness, Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

This is a suit for maintenance brought by Margaret Mann Ryan against her husband, John Robert Ryan. Plaintiff and defendant were married on June 28, 1941, in Winnipeg, Canada, and have resided in the District of Columbia since 1945. No children were born of the marriage.

In January, 1954, defendant ascertained that plaintiff had misinformed him of her age at the time they were married; he believed her to be thirty-three, while in fact she was forty-three. He informed his wife that he wanted to separate from her. Plaintiff became acutely upset. She had periodic attacks of hysteria and experienced great mental turmoil. While this condition prevailed, defendant procured plaintiff's signature upon a property settlement agreement which completely terminated his financial responsibilities to her.

Plaintiff signed the agreement on March 24, 1954. The evidence indicates that she had it in her possession at least five days before signing it, that she had read it, and that she had never consulted an attorney about it. Although she seemed to know the general nature of the agreement, the Court believes she was unaware of the consequences of signing it because of her mental and physical condition. Under the agreement plaintiff received $100 a month for twelve months, plus $2,000 at the end of six months, subject to forfeiture if she were to bother or harass the defendant in any way within this time. Since this suit was instituted in June, which was within six months of the signing, the $2,000 has been forfeited. The agreement also gave plaintiff such furniture as she desired, and complete ownership of her personal and real property.

On March 30, 1954, plaintiff signed a power of attorney authorizing an appearance on her behalf in the Nevada divorce proceedings which defendant contemplated. Although this power of attorney was signed a week after the separation agreement, it appears that it was prepared by the Nevada attorneys at about the same time the separation agreement was signed. As the document now stands, it expresses plaintiff's desire that the property settlement agreement be incorporated into the divorce decree. Defendant states on the one hand, that prior to his arrival in Nevada, he had never informed his Nevada attorney about the separation agreement of March 24, 1954, and on the other, that when his wife signed the power of attorney, the provision dealing with the property settlement appeared on the document.

On April 2, 1954, plaintiff went to Florida. She did not return to the District of Columbia until the middle of June, 1954. While in Florida, she discussed the settlement agreement with others and realized her mistake in signing an agreement which gave her so little. Upon her return to the District she learned that defendant had gone to Nevada to obtain a divorce. On June 23, 1954, she filed a petition to set aside the property settlement agreement and to enjoin defendant from securing his Nevada divorce.

Defendant had left for Nevada on May 22, 1954, arriving in Las Vegas on May 25, 1954. On July 6, 1954, the forty-two days required residency having expired, he obtained his divorce decree. On July 7, 1954, he married one Florence McCracken who had driven to Las Vegas from the District of Columbia for the occasion. On July 8, 1954, the couple left Nevada, returned to the District of Columbia, and have since resided in Arlington County, Virginia. Defendant had remained in Nevada forty-four days—two days longer than the time required for the divorce.

The circumstances surrounding defendant's trip to Nevada indicate clearly that no bona fide domicile was acquired there. Defendant took temporary leave from his permanent government job in the District area. He carried enough clothing to supply him for the duration of his trip, the rest being left in his District apartment. He drove to Nevada in his own automobile, bearing District of Columbia tags which were never changed during his brief stay in Nevada. His second automobile was left in the District with the woman he subsequently married. Upon arriving in Nevada, he rented an apartment for the exact number of weeks he expected it would take to secure a divorce. He made two colorable attempts to locate jobs in Nevada, testifying that he would have remained there only if he could have secured a job suitable to his taste and abilities. Defendant and his new wife arrived in the District on July 12, 1954, and within a few days he brought ejectment proceedings against plaintiff to obtain possession of the apartment which was then occupied by her. He stated that he did this only to obtain certain of his personal belongings.

Plaintiff asserts that the marriage was a happy one; that defendant would

have married her even if he knew her true age; that she always wanted to have children; that from the day she learned defendant would seek a divorce she was in a state of physical and mental turmoil; that she signed the property settlement agreement due to threats of deportation based upon her Scottish birth, due to threats of annulment and to ill publicity among her friends, and without thoroughly reading or comprehending the contents of the agreement. Lastly, she says she has no recollection of signing the power of attorney, although admitting her signature thereon. Defendant, on the contrary, asserts that while they had a happy life until he learned of her deception, she had a fear of having children; that she made excuse after excuse to postpone conception; that while defendant would have married her even if he had known her true age, he would not have agreed to postpone having children. He further asserts that her physical and mental condition from January through March was not so severe as plaintiff maintains; that she had the property agreement in her hands for at least ten days; that she had read it and understood it; and that plaintiff has a convenient memory in regard to the power of attorney, for she signed it so that defendant would go out of the District to avoid publicity surrounding the divorce.

Plaintiff seeks permanent maintenance, attorney's fees, etc. For this Court to grant her request, it must refuse recognition to the Nevada divorce decree and then set aside the separation agreement which was incorporated into the decree.

 Under the full faith and credit clause, U.S.Const. Art. 4, § 1, a valid decree rendered by a court of competent jurisdiction is entitled to recognition in another state. A state granting a divorce decree has jurisdiction if the plaintiff is validly domiciled in such state. Williams v. State of North Carolina, 1942, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279. A divorce decree based upon a finding of domicile by the divorce granting state, and entered in a proceeding in which the defendant appeared, is entitled to full faith and credit and cannot be impeached by a court of a sister state on the ground that the court granting the divorce had no jurisdiction for lack of requisite domicile of any of the parties. Sherrer v. Sherrer, 1948, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429; Coe v. Coe, 1948, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451.

This rule is predicated upon the *opportunity* of the nonresident defendant, who makes an appearance, to litigate the jurisdictional issue of domicile. It follows that whether or not the defendant availed himself of the opportunity is immaterial. Whether or not defendant in the divorce proceedings admitted, Coe v. Coe, supra, or failed to question, Johnson v. Muelberger, 1951, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552, or contested, Sherrer v. Sherrer, supra, the plaintiff's domicile, collateral attack on the issue of domicile is unavailable.

Counsel for defendant, relying upon this rule, insists that no collateral attack is available in this case since plaintiff, by signing the power of attorney, made an appearance in the Nevada divorce proceeding. The cases upon which defendant relies are not controlling because none involved an appearance obtained by intimidation from one mentally and physically unnerved, under circumstances of duress and as part of a measured scheme by a defendant to defraud the court challenging the divorce decree. In all cases cited by defendant the appearance was of such a nature that a fair opportunity was actually afforded to contest the jurisdiction of the divorce granting state and there was no such fraud upon the court as is indicated here. Cook v. Cook, 1951, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146; Sherrer v. Sherrer, supra; Coe v. Coe, supra; Johnson v. Muelberger, supra; Drinkwater v. Drinkwater, D.C. 1953, 111 F.Supp. 559.

 In this jurisdiction, and in others, less than a fair and complete ap-

pearance has been held not to constitute an estoppel to collateral attack on the foreign divorce. See particularly Hobbs v. Hobbs, 1952, 91 U.S.App.D.C. 68, 197 F.2d 412. Also Holt v. Holt, 1935, 64 App.D.C. 280, 77 F.2d 538; Staedler v. Staedler, 1951, 6 N.J. 380, 78 A.2d 896, 28 A.L.R.2d 1291; Gromeeko v. Gromeeko, 1952, 110 Cal.App.2d 117, 242 P.2d 41.

The Court finds that the appearance made by Mrs. Ryan was less than the kind which creates an estoppel to collateral attack on the jurisdiction of the Nevada court. The Court finds, beyond this, that in defendant's anxiety to obtain a divorce he employed tactics which can only be construed as a calculated endeavor to defraud this Court, and that plaintiff's appearance cannot validate such fraud. At no time did defendant manifest an intent to abandon his District of Columbia domicile and take up a new domicile in Nevada. The evidence indicates that he planned to perjure himself as to taking up Nevada residence before he went there and did in fact perjure himself when he arrived.

The presumption of validity of the Nevada divorce decree has been overcome by sufficient evidence establishing that neither party was validly domiciled in Nevada. As a result, such decree need not be recognized in the District of Columbia. When a claim of bona fide domicile is betrayed by the evidence, it has been the consistent policy of the District of Columbia to refuse recognition to the divorce. Hobbs v. Hobbs, supra; Huggs v. Huggs, 1952, 90 U.S. App.D.C. 237, 195 F.2d 771; White v. White, 1945, 80 U.S.App.D.C. 156, 150 F.2d 157; Evans v. Evans, 1945, 80 U.S.App.D.C. 133, 149 F.2d 831; Sears v. Sears, 1937, 67 App.D.C. 379, 92 F.2d 530; Holt v. Holt, supra.

Since defendant's entire course of conduct betokens an attempt to defraud this Court on the issue of domicile, it is too much to ask that this Court give recognition to a decree obtained under such circumstances.

Since the divorce is not recognized, the property settlement agreement incorporated into it is not res adjudicata and may be examined by this Court. Divorce proceedings are equitable in nature. When a court is asked to determine rights in a suit for maintenance it must look to all existing conditions and circumstances before framing its remedial relief. Franklin v. Franklin, 1948, 83 U.S.App.D.C. 385, 171 F.2d 12. While plaintiff's deception concerning her age was dishonorable and should not be condoned, neither can the Court condone an unconscionable property settlement agreement which strips the wife of all her financial rights and was obtained by intimidation and coercion at a time when plaintiff lacked reasonable mental stability. Defendant is employed at a salary of $10,000 a year and receives retired officer's pay amounting to $50 a month. He holds real and personal property which amounts to more than $10,000. Plaintiff is fifty-six years old, has not been gainfully employed since 1941 when she married defendant. Due to her emotional disturbance and her age, her possibilities for earning a living are limited. She has less than $2,000. The background, the spirit and the letter of this agreement are such that the Court is obliged to strike it down.

It is the opinion of the Court that plaintiff be awarded permanent maintenance in the amount of $150 a month. Defendant is to pay counsel fees of plaintiff in the amount of $500. The Court finds that plaintiff is not entitled to other furniture except such as she may have in her possession.

An order may be prepared consistent with these findings.