75 N.J. Super. 541 (1962)
183 A.2d 499
MARY MARGARET GUERIERI, PLAINTIFF,
v.
JOHN GUERIERI, JR., DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided June 27, 1962.
*542 Messrs. Perlman & Lerner, attorneys (Mrs. Rose Lerner Perlman appearing), for plaintiff.
Mr. Joseph P. Merlino, attorney for defendant.
BENNETT, J.C.C. (temporarily assigned).
This is an action to set aside a divorce obtained by the defendant in *543 the Winston County Circuit Court of Alabama on March 8, 1961, to procure a divorce by the plaintiff against the defendant on the ground of the adultery of the defendant; for custody of the child of the marriage between plaintiff and defendant, and for alimony and support.
The parties herein were lawfully married on November 29, 1952 in North Plainfield, New Jersey. The plaintiff, Mary Margaret Guerieri, presently resides at 39 Matthew Drive, Hamilton Square, New Jersey, while the defendant, John Guerieri, Jr. now resides at 247 Pope Avenue, Hamilton Township, New Jersey. Since receiving his Alabama divorce John Guerieri has married Rosalia R. Acolia with whom he is living at this time.
The defendant appeared personally before the Alabama Court on March 4, 1961, where he filed a complaint against the plaintiff for divorce on the ground of cruelty. At this time he produced a paper entitled "Answer and Waiver," which was signed by his wife on January 17, 1961. This "Answer and Waiver" provides:
"Comes the Respondent in the above styled cause and accepts service of a Bill of Complaint heretofore filed in said cause; waives notice of the filing of interrogatories in said cause, and the right to cross same; waives notice of the taking of testimony in said cause; waives the appointment of a Commissioner for the taking of testimony and consents that testimony may be taken by affidavit, or affidavits before any Notary Public or other officer authorized to administer oath or commission appointed by the Court, or as provided by Alabama Code 1940, Title 7, Section 475, or otherwise in said cause, and consents that the cause may proceed and be submitted for final decree without further notice whatever to the respondent.
And for answer to the Bill of Complaint heretofore filed in this cause, Respondent denies the allegations thereof except those pertaining to the existence of the marriage relationship and jurisdiction and demands strict proof thereof."
At the same time the defendant produced his wife's appointment of Alabama counsel, which also was executed on January 17, 1961.
The plaintiff claims that this waiver and appointment of counsel was achieved through threats and the exertion *544 of undue pressures. In fact, on January 19, 1961 she sent a telegram to John Guerieri repudiating the waiver and appointment because of misrepresentation and absence of legal counsel. However, the defendant produced another statement signed by Mrs. Guerieri, dated February 9, 1961, advising him to disregard the telegram sent on January 19, 1961. The plaintiff also claims that this statement was procured by threats and pressures, and by the promise that no divorce proceedings would be initiated without consulting her. It is further alleged by the plaintiff that she knew nothing of the institution of the proceedings in Alabama, was not served with any complaint or summons therein, and knew nothing of the granting of the decree for divorce or of its existence until she saw in the Trenton Times newspaper a notice of application for a marriage license by John Guerieri, Jr. and Rosalia R. Acolia on November 3, 1961.
The relevant law of Alabama, as amended July 6, 1945, provides:
"When the defendant is a non-resident, the other party to the marriage must have been a bona fide resident of this state for one year next before the filing of the bill, which must be alleged and proved; provided, however, the provisions of this section shall not be of force and effect when the court has jurisdiction of both parties to the cause of action." Ala. Code of 1940 Title 34, section 29.
Jennings v. Jennings, 251 Ala. 73, 36 So.2d 236, 3 A.L.R.2d 662 (1948), concerned the power of the Legislature to authorize a decree of divorce in Alabama when the parties are personally before the court, but reside in another state. The Supreme Court of Alabama therein held:
"Jurisdiction, which is the judicial power to grant a divorce, is founded on domicile under our system of law. Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366; Bell v. Bell, 181 U.S. 175, 21 S.Ct. 551, 45 L.Ed. 804; Andrews v. Andrews, 188 U.S. 14, 23 S.Ct. 237, 47 L.Ed. 366; Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 1097, 92 L.Ed. 1429; Wilkes v. Wilkes, 245 Ala. 54, 16 So.2d 15.
*545 * * * it is recognized that unless one of the parties has a residence or domicile within the state, the parties cannot even by consent confer jurisdiction on the courts of that state to grant a divorce." (251 Ala., at p. 74, 36 So.2d, at p. 237.)
In Gee v. Gee, 252 Ala. 103, 105, 106, 39 So.2d 406 (Sup. Ct. 1949), the court stated:
"Parties cannot by consent confer jurisdiction over a res, nor can the legislature do so by act, when the res is not within the power of State authorities." * * *
The court properly overruled the motion to dismiss it for want of jurisdiction. However, the motion was not necessary, because if the proof was not satisfactory that one or both of the parties was a resident citizen of Alabama when the bill was filed, a decree of divorce could not be granted because of the absence of jurisdiction over the subject matter."
In Hartigan v. Hartigan, 272 Ala. 67, 128 So.2d 725 (1961), the Alabama Supreme Court upheld the action of a lower court which nullified on its own motion an Alabama divorce decree obtained by a New York couple in 1954 when it came to the court's attention that the parties were nonresidents when the decree was obtained. The court stated:
"Thus, where both parties to a divorce action do not reside within this state, the marriage relation is without the state and jurisdiction cannot be acquired by courts of this state even by consent of the parties." (128 So.2d, at p. 729)
In dealing with the right of another state to collaterally attack a judicial determination made in Alabama the court in the Hartigan case said:
"Not only is it conclusive that the 1954 divorce decree was void for want of jurisdiction of the subject matter in Alabama, but it is not entitled to full faith and credit in other jurisdictions." (at page 733)
It was held in Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945), that if *546 Nevada's divorce decrees are to be accorded full faith and credit in the courts of her sister states, it is essential that Nevada have proper jurisdiction over the divorce proceedings. This means that at least one of the parties to each ex parte proceeding must have a bona fide domicile within Nevada for what length of time Nevada may prescribe. The court stated:
"The State of domiciliary origin should not be bound by an unfounded, even if not collusive, recital in the record of a court of another State. As to the truth or existence of a fact, like that of domicile, upon which depends the power to exert judicial authority, a State not a party to the exertion of such judicial authority in another State but seriously affected by it has a right, when asserting its own unquestioned authority, to ascertain the truth or existence of that crucial fact."
In effect, the court held that a state decree of divorce may be collaterally impeached in another state for want of jurisdiction, though the record purports to show jurisdiction.
In Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948), and Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 1097, 92 L.Ed. 1451 (1948), the Supreme Court established the rule that when a defendant has appeared and participated, and the parties were given full opportunity to litigate the issues, it was not later open to such defendant to make a collateral attack on the divorce decree. The same view is expressed in Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552 (1951), and Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146 (1951).
In the recent case of Parata v. Parata, 179 A.2d 723, decided on April 13, 1962, the Municipal Court of Appeals for the District of Columbia refused to recognize an Alabama divorce obtained by a District of Columbia husband who stayed in Alabama "only long enough to sign a complaint and affidavit." (at page 726). The court concluded that the divorce was subject to the wife's collateral attack in the District of Columbia, even though she appeared generally *547 and signed a waiver admitting her husband was an Alabama resident. The court observed (at p. 725) that "Full faith and credit is by no means universal or automatic." The court also held that
"Here there was not such actual appearance and `participation' by the wife as to justify recognition of the decree which followed. The rule announced in Sherrer and Coe does not require it, and we hold that for lack of jurisdiction over the res, or over either of the parties, the Alabama decree is subject to challenge in this jurisdiction." (at page 726.)
In White v. White, 150 F.2d 157, 80 U.S. App D.C. 156 (D.C. Cir. 1945), the court held that a Florida divorce decree obtained by the husband who went to Florida solely for the purpose of obtaining the divorce, and with no bona fide intention of remaining therein permanently or indefinitely, was not entitled to full faith and credit in the District of Columbia, so as to bar the wife's action for maintenance. And in Ryan v. Ryan, 139 F. Supp. 98 (D.D.C. 1954), affirmed 230 F.2d 838 (D.C. Cir. 1956), 97 U.S. App. D.C. 288, the court added that when a claim of bona fide domicile is betrayed by the evidence, it has been a consistent policy of the District of Columbia to refuse recognition to the divorce. Hobbs v. Hobbs, 197 F.2d 412, 91 U.S. App. D.C. 68, Huggs v. Huggs, 195 F.2d 771, 90 U.S. App. D.C. 237 (D.C. Cir. 152). The court concluded in the Ryan case, supra, that since the defendant's entire course of conduct showed an attempt to defraud the court on the issue of domicile, it was too much to ask that the court give recognition to a decree obtained under such circumstances.
Wolff v. Wolff, 134 N.J. Eq. 8 (Ch. 1943) is a case in which the husband procured from his wife a power of attorney in blank wherein he inserted the name of a lawyer who was to enter his wife's appearance in a suit which he contemplated instituting in the State of Nevada. She repudiated this power before it was acted upon. However, the *548 husband, notwithstanding the repudiation, brought the suit and by the fraudulent use of the revoked power procured a decree of divorce without process and without notice to her. The decree was held to be invalid as lacking due process, and the wife's subsequent suit for separate maintenance was allowed. The court held that extrinsic or collateral fraud practiced by the successful party to a suit, whereby the unsuccessful party was prevented from exhibiting fully his case, so that there was no real contest, renders the decree invalid as lacking a basis of procedural due process, and hence was vulnerable to collateral attack.
In Staedler v. Staedler, 6 N.J. 380, 392 (1951), both the husband and wife were bona fide domiciliaries of New Jersey. The husband was not a resident of Florida for the 90 days next preceding the institution of his divorce action in that state, and the attorney ostensibly acting on behalf of his wife was actually an agent for the husband, who paid for his services and controlled his actions. The court found that the husband could not use the full faith and credit clause of the Constitution to foreclose inquiry, and could not use his appearance in the Florida court to perpetrate a fraud. The New Jersey Supreme Court held:
"We are firmly of the opinion that the principles of the Sherrer, supra and Coe, supra cases only apply to a true adversary proceeding where the parties are represented by counsel of their independent choice and where there is an opportunity to make a voluntary decision on the question as to whether or not the case should be fully litigated either on the question of jurisdiction or the merits, and that once an election has been made by the defendant under such circumstances and conditions that then and then alone can the judgment of the court be res adjudicata and the full faith and credit clause operate for the advancement of justice rather than for the perpetration of a fraud."
The case of Isserman v. Isserman, 11 N.J. 106 (1952), distinguished Staedler v. Staedler, supra, by pointing out that in Staedler the wife was represented by counsel chosen by her husband and under his direct control. In the Isserman *549 case the court held that where the wife, by her own independently selected counsel appeared in the foreign divorce proceedings instituted by her husband, pleaded to the complaint, and filed a cross-complaint, and contested the jurisdictional question of the residence of her husband, she could not thereafter challenge the validity of the divorce decree in New Jersey but that same was entitled to full faith and credit under the Federal Constitution.
In Nappe v. Nappe, 20 N.J. 337 (1956), both parties personally appeared in Nevada. The wife sued for divorce based upon residence there which met the jurisdictional requirements of the Nevada court, and both sides were represented by independent counsel with an opportunity to test the jurisdictional question. The New Jersey Court held that the divorce was entitled to full faith and credit even though both parties went to Nevada only to procure the divorce and returned to New Jersey immediately after the divorce.
In Schlemm v. Schlemm, 31 N.J. 557 (1960), the Nevada court specifically found that Mr. Schlemm was domiciled in that state. The New Jersey court found that Mrs. Schlemm was fully aware of the effect of these proceedings, that she was adequately advised of her legal rights, that she knew the nature of the power of attorney which she signed, and that she was represented by counsel of her choosing. Our Supreme Court held that New Jersey is bound to give full faith and credit to divorce decrees of other states in instances where the courts of other states have made jurisdictional findings of domicile after proceedings in which both parties have participated.
In the present case the defendant, John Guerieri, was in Alabama less than a week. His wife, Mary Guerieri, was not represented by impartial counsel. In fact, it is her contention that she did not even know of the divorce proceedings. The Answer and Waiver signed by her, later repudiated and then subsequently recognized has questionable validity. Counsel appointed by her was actually retained *550 to represent the husband. The answer and waiver and appointment of counsel were signed in anticipation of litigation, to be used at the husband's pleasure. It is believed these facts mock the elements of an adversary proceeding, and fall short of the actual participation which is required by New Jersey law. Wolff v. Wolff; Staedler v. Staedler; Isserman v. Isserman; Nappe v. Nappe, and Schlemm v. Schlemm, supra.
This court therefore concludes that the Alabama divorce procured by the defendant, John Guerieri, Jr., is not entitled to full faith and credit and is open to collateral attack in New Jersey. Williams v. North Carolina II; Hartigan v. Hartigan; Ryan v. Ryan; White v. White; Parata v. Parata, and Staedler v. Staedler, supra. Mary Guerieri did not personally appear in Alabama, was not represented there by counsel of her independent choice, and, in effect, was not given an opportunity to fully litigate the issues.
It is therefore held that for lack of jurisdiction over the res, or over either of the parties, the Alabama divorce will not be recognized.
In this action the plaintiff, Mary Guerieri also seeks a divorce from the defendant, John Guerieri, Jr., on the ground of his adultery.
This court finds that the defendant, John Guerieri, Jr., and Rosalia R. Acolia are presently living together as husband and wife at 247 Pope Avenue, Hamilton Township, New Jersey. This cohabitation was openly commenced on November 3, 1961, after these two parties went through a ceremonial marriage in Ewing Township, New Jersey. It has continued down to the present time.
The defendant relies on the recent case of Wells v. Wells, 73 N.J. Super. 545 (1962), to substantiate his claim that he has not committed adultery. In that case the husband remarried in good faith 11 years after his first wife's disappearance. However, the court found him guilty of adultery, and raised it by way of recrimination as a *551 bar to his divorce action, when he continued marital relations with his second wife after learning that his first wife was still alive. The second marriage of the husband was valid under N.J.S. 3A:40-1, which raises a presumption of death after seven years of continued absence. In the case at bar the second marriage of John Guerieri, Jr., is not protected by any such law or presumption.
In Newton v. Newton, 13 N.J. Misc. 613, 179 A. 621 (Ch. 1935), the defendant went to Mexico, where he stayed for less than a week, for the sole and express purpose of obtaining a divorce there. A decree of divorce was granted though the petitioner sought a divorce on the ground of the husband's adultery. It was held that at the time of the Mexican decree neither the petitioner nor defendant was domiciled or resident in Mexico, but both were domiciled in New Jersey. The divorce was therefore declared invalid in New Jersey and the petitioner was granted a decree for divorce on the ground of the defendant's adultery.
In the case at bar the divorce procured by John Guerieri, Jr., in Albama is not valid in New Jersey. He has since remarried and has been living with his new spouse as husband and wife. A divorce will therefore be granted to the petitioner, Mary Guerieri, on the ground of the adultery of her husband, John Guerieri, Jr.
The defendant further contends that the plaintiff herein should be barred from seeking a divorce because of her inequitable conduct or unclean hands. To substantiate this claim the defendant cites Dacunzo v. Edgye, 33 N.J. Super. 504 (App. Div. 1955). In that case the plaintiff, husband, was granted an annulment on the ground that the defendant had not been divorced from her former husband. The court stated the rule as to inequitable conduct on the part of the husband to be:
"Did he go through a ceremonial marriage with defendant, or continue to live with her as man and wife, knowing or having reason *552 to know of the existence of an impediment to lawful wedlock?" (at page 518.)
The court found that the evidence did not show any inequitable conduct on the part of the plaintiff.
The defense of unclean hands has not been established against the plaintiff, Mary Guerieri. Her conduct and actions were vascillatory, but not complicitous.
A decree may be entered in accordance with the views herein expressed.